August 12, 2011

Hon. David G. Larimer
Senior United States District Judge
U.S. District Court for the Western District of New York
2120 United States Courthouse
100 State Street
Rochester, New York 14614-1387



**RE: Miscellaneous Action 6:11 –MC-06009-DGL**

Dear Judge Larimer:

Enclosed herewith are the following documents:
- "Motion To Quash Subpoena To Take Deposition – Or, In The Alternative, To Limit and Open Access To That Deposition"; and
- "Declaration In Support Of Motion To Quash Subpoena To Take Deposition – Or, In The Alternative, To Limit and Open Access To That Deposition".

I am filing these documents in conjunction with the hearing that you have <u>apparently</u> scheduled to be held at 2:30 PM (EDT) on August 22, 2011 with respect to NXIVM Corporation's ("NXIVM") application to compel me (a) to comply with a subpoena that was previously issued to me via this Court – and (b) to give deposition testimony on or before September 12, 2011. I emphasize the word "apparently" because I have only recently received a copy of the "Order" that this Court issued on August 3, 2011 from Susan Faye Dones ("Ms. Dones"), who is one of the parties whose bankruptcy cases are the underlying matter with respect to NXIVM's attempt to subpoena me (See <u>Attachment I</u> for a copy of that "Order"). In this regard, I had not previously received a copy of that "Order" despite the fact that it specified NXIVM was supposed to mail a copy of it to me, via First Class Mail, to my home address – and to send a copy of it to me via FedEx Next Day Delivery.

A summary of the tortured history that has led me to file the attached documents is as follows:
- On June 8, 2011, the Hon. Brian D. Lynch, the judge who is presiding over the joined bankruptcy cases of Ms. Dones and Kim Marie Woolhouse ("Ms. Woolhouse"), approved the issuance of a subpoena to compel my deposition by NXIVM (<u>Such judicial approval was required because of NXIVM's prior abuse of the subpoena process in those joined bankruptcy cases</u>);
- On June 29, 2011, NXIVM issued a subpoena to me via this Court;
- On July 5, 2011, an agent of NXIVM threw a copy of the above-referenced subpoena at the feet of my husband, Scott T. Foley;
- On July 12, 2011, I filed a "Motion To Quash" the subpoena with this Court – and with the United States Bankruptcy Court for the Western District of Washington at Tacoma;

- On July 15, 2011, Cheri J. Fiordeliso, Deputy Clerk for the United States Bankruptcy Court for the Western District of New York, sent me a letter which indicated that there was no record of this case in that court (See Attachment II for a copy of that letter and the related envelope)[1];
- On July 21, 2011, Barbara Keenan ("Ms. Keenan") sent me a letter which indicated that the this Court had not accepted my July 12, 2011 filing because I had not sent in the appropriate filing fee of $39.00 – and  which referenced filings in "the Northern District of Washington" and  "the Northern District of New York" even though I had never submitted anything to either of those Courts (See Attachment III for a copy of that letter and the related letter);
- On August 3,  2011, NXIVM filed its Response" to my "Motion To Quash" in the United States Bankruptcy Court for the Western District of Washington;
- On August 4, 2011, I was informed that Judge Lynch would be holding a hearing  at 1:00 PM (EDT) on August 10, 2011 with respect to my "Motion To Quash" (That hearing was also scheduled to address several other pending motions in the joined bankruptcy cases of Ms. Dones and Ms. Woolhouse);
- During the course of the hearing on August 10, 2011, Judge Lynch indicated that he lacked the necessary  jurisdiction to grant my "Motion To Quash" – but issued several limitations with respect to my deposition (e.g., it could only last for 4 hours; it could not be videotaped; etc.); and
- Following the conclusion of the August 10, 2011 hearing, I received and reviewed a copy of the "Order" that is set forth in Attachment I.

Please excuse any errors with respect to the format or content of the enclosed filings.  Because I cannot afford to hire an attorney to represent me – and because NXIVM's reputation for complex and never-ending litigation is widespread throughout the legal community has made it impossible for me to find someone who would represent me on a *Pro Bono* basis – I am, by necessity, representing myself in this matter on a *Pro Se* basis.

Please direct all related correspondence regarding this matter to me at the following address:

Toni Foley
13 Santa Circle
Pittsford, NY 145343

Sincerely,

---

[1] Since I never submitted anything to the United States Bankruptcy Court for the Western District of New York, I assume that this Court must have forwarded my July 12, 2011 filing to that Court.



Toni F. Foley

PS/I am at a loss to understand why NXIVM sought to seal the "Order" with respect to its attempt to subpoena me and take my deposition in the joined bankruptcy cases of Ms. Dones and Ms. Woolhouse. Given, however, some of the legal tactics that NXIVM has previously utilized in its multiple lawsuits against those that it considers to be its enemies, I must assume that it was part of its strategy for keeping me from learning about all of its filings with respect to me.

I am also at a loss to understand why Pamela A. Nichols, one of the three (3) attorneys who represented NXIVM during the August 10, 2011 hearing before Judge Lynch, never informed him about the fact that NXIVM had already obtained an "Order" from your Honor compelling me to submit to a deposition on or before September 12, 2011. In this regard, withholding such information from Judge Lynch is quite revealing about the willingness of NXIVM's attorneys to utilize questionable legal tactics in order to gain an advantage in legal proceedings.

cc:     Susan Faye Dones, *Pro Se*
        call2action@msn.com
        616 9th Avenue, SW
        Puyallup, WA 98371
        Via Email


        Kim Marie Woolhouse, *Pro Se*
        kimwoolhouse@msn.com
        616 9th Avenue, SW
        Puyallup, WA 98371
        Via Email


        Paul D. Swanson, WSBA No. 13656
        swanson@lanepowell.com
        Tiffany H. Scott, WSBA No. 41740
        scottt@lanepoweell.com
        c/o Lane Powell PC
        1420 Fifth Avenue

Suite 4100
Seattle, WA 98101-2338
Via Email and CM/ECF

Robert D. Crockett, admitted *Pro Hac Vice*
bob.crockett@lw.com
c/o Latham & Watkins, LLP
355 South Grand Avenue
Los Angeles, CA 90071-1560
Via Email and CM/ECF
Stephen R. Coffey, admitted *Pro Hac Vice*
scoffey@oalaw.com
Pamela A. Nichols, admitted *Pro Hac Vice*
pnichols@oalaw.com
Richard H. Weiskopf, admitted *Pro Hac Vice*
rweiskopf@oalaw.com
c/o O'Connell & Aronowitz PC
54 State Street
Albany, NY 12207
Via Email and CM/ECF

Mark Waldron, Trustee
trustee@orlandini-waldron.com
Office of the Clerk
c/o United States Bankruptcy Court
for the Western District of Washington At Tacoma
1717 Pacific Ave.
Tacoma, WA 98402
Via Email and CM/ECF

# Attachment I

CM/ECF LIVE - U.S. District Court:nywd                        https://ecf.nywd.circ2.dcn/cgi-bin/Dispatch.pl?104938273872166

## Other Orders/Judgments
6:11-mc-06009-DGL *SEALED* Nxivm Corporation v. Dones et al
SEALED

**U.S. DISTRICT COURT**

U.S. District Court, Western District of New York

## Notice of Electronic Filing

The following transaction was entered on 8/3/2011 at 12:45 PM EDT and filed on 8/3/2011
**Case Name:**      Nxivm Corporation v. Dones et al
**Case Number:**    6:11-mc-06009-DGL *SEALED*
**Filer:**
**Document Number:** 5

**Docket Text:**
**ORDER re [1] MOTION to Compel Motion Hearing set for 8/22/2011 02:30 PM before Hon. David G. Larimer. Signed by Hon. David G. Larimer on 8/3/11. (RE)**

**6:11-mc-06009-DGL *SEALED* No electronic public notice will be sent because the case/entry is sealed.**

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1042579058 [Date=8/3/2011] [FileNumber=1965932-0]
[2728bb09571ee41d818ca9b925a017e0f8cc835f928d4b278d67e5d6680b681fa1b4
e35075b317d5007da8137792d89e565270102f4d4ab928dfd86145160035]]

RECEIVED

AUG 0 8 2011

O'Connell and Aronowitz, P.C.
For: JK|PAN |M H| PM

COPY

Case 6:11-mc-06009-DGL *SEALED*   Document 5   Filed 08/03/11   Page 1 of 2

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

FILED

AUG ˇ 3 2011

MICHAEL J. ROEMER, CLERK
WESTERN DISTRICT OF NY

In Re Application of NXIVM Corporation for Ex Parte Motion
to Shorten Time on Motion to Compel the Deposition of
Nonparty Witness Toni Natalie and Motion to Compel the
Deposition of Nonparty Witness Toni Natalie.

**ORDER**
Misc. Action No.:
_11_ - MC - _0079_
( _1_ )

Hon. _____

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

NXIVM CORPORATION,

-against-

SUSAN FAYE DONES (10-04338-BDL) and
KIM MARIE WOOLHOUSE (10-04339-BDL)

Plaintiff, (Action Pending in
U.S. Bankruptcy
Court, Western
District of
Washington)

Defendants.

Upon the Ex Parte Motion to Shorten Time on NXIVM's Motion to Compel the
Deposition of Nonparty Witness Toni Natalie and the Motion to Compel the Deposition of
Nonparty Witness Toni Natalie, by O'Connell and Aronowitz (Pamela A. Nichols, Esq., of
counsel), attorneys for Movant, NXIVM Corporation; the Affirmation of Pamela A. Nichols,
Esq., signed the 27th day of July, 2011, together with Exhibits annexed thereto; the Affirmation
of Paul D. Swanson, Esq., signed the 29th day of July, 2011, together with Exhibits annexed
thereto; the Affidavit of Lisa Derks, sworn to the 29th day of July, 2011; and the Memorandum
of Law in Support thereof; and upon proceedings heretofore had herein;

1

NOW, upon the Motion of O'Connell and Aronowitz (Pamela A. Nichols, Esq., of counsel), attorneys for NXIVM Corporation, Plaintiff in the Adversary Proceeding pending in the United States Bankruptcy Court for the Western District of Washington, and Movant on this application, it is hereby

ORDERED, that, good cause having been shown, NXIVM's Ex Parte Motion to Shorten Time is granted, and it is further

ORDERED, that an expedited hearing shall be held on August 22, 2011, at 2:30 p.m. o'clock, or as soon thereafter as counsel can be heard, with respect to Movant's application to compel non-party witness Toni Natalie to comply with the subpoena issued to her and give deposition testimony on or before 9/2/11; and it is further

ORDERED, that Plaintiff shall serve a copy of this Order, together with the papers upon which it is based, upon nonparty witness Toni Natalie by mailing via First Class Mail to her and by Fed Ex, next day delivery address, located at 13 Santa Circle, Pittsford, New York, 14534; and upon Defendant Susan Faye Dones; and upon Kim Marie Woolhouse via electronic mail at the addresses provided for service as set forth by the Bankruptcy Court, Western District of Washington, prior Order.

Signed this 3 day of August 2011
In Rochester, New York

Hon. DAVID LARIMER
United States District Court
Western District of New York

2

# Attachment II

**OFFICE OF THE CLERK**
**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NEW YORK**
*1220 U.S. Courthouse, 100 State Street*
*Rochester, New York 14614*

Paul R. Warren
Clerk of Court

Lisa Bertino Beaser
Chief Deputy Clerk

July 15, 2011

**Re:** **Bankruptcy No. 10-45608-BDL/ Adversary No. 10-04338-BDL and**
**Bankruptcy No. 10-45608-BDL/Adversary No. 10-04338-BDL**

Dear : Ms. Natalie

Enclosed is your document which was received on July 15, 2011. We have checked our record and cannot find a bankruptcy case filed in the Western District of New York under the name stated above.

Therefore, we are unable to process your document and are returning the same to you.

Very truly yours,

Cheri J. Fiordeliso
Deputy Clerk

TONI FOLEY
13 SANTA CIRCLE
PITTSFORD NY 14534

UNITED STATES COURTHOUSE
ROCHESTER, NY 14614-1387

OFFICIAL BUSINESS

# Attachment III

OFFICE OF THE CLERK
# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

2120 U.S. COURTHOUSE
100 STATE STREET
ROCHESTER, NEW YORK 14614-1387
(585) 613-4000 ★ FAX (585) 613-4035

**MICHAEL J. ROEMER**
CLERK OF COURT

**JEANNE M. SPAMPATA**
CHIEF DEPUTY CLERK

# Memorandum

**TO:**      Toni Foley

**FROM:**    Barbara Keenan

**SUBJECT:**  Letter

**DATE:**    July 21, 2011


Enclosed is the paper work you submitted to The Western District of New York Court. It appears that you may be trying to file a motion to quash a subpoena here in the Western District. If that is the case, you are required to pay a $39.00 filing fee and submit the required paper work for the Western District Court. You have submitted information from both the Northern District of Washington and the Northern District of New York.

If you have questions regarding this matter, please call the Clerks Office at (585) 613-4000.



Toni Natalie
13 Santa Circle
Pittsford, NY 14584

RECEIVED

JUL 15 2011

BANKRUPTCY COURT
ROCHESTER, NY

1461431317 CO99

Office of the Clerk
U.S. District Court for the Western District of New York
Rochester Division
2120 United States Courthouse
100 State Street
Rochester, New York 14614-1387

UNITED STATES BANKRUPTCY COURT
1220 U.S. COURTHOUSE
ROCHESTER, NEW YORK 14614

OFFICIAL BUSINESS

145345*2424  C002

Toni Natalie
13 Santa Circle
Pittsford, NY 14534



THE HONORABLE DAVID G. LARIMER
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
Hearing Date: August 22, 2011

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

In Re Application of NXIVM Corporation for Ex Parte
Motion to Shorten Time on Motion to Compel the
Deposition of Nonparty Witness Toni Natalie and
Motion to Compel the Deposition of Nonparty Witness
Toni Natalie

**NONPARTY TONI F.
FOLEY'S MOTION TO
QUASH SUBPOENA TO
TAKE DEPOSITION –
OR, IN THE
ALTERNATIVE
TO LIMIT AND OPEN
ACCESS TO THAT**

**Miscellaneous Action No.:
6:11- MC -06009- DGL**

NXIVM CORPORATION,

(Adversary Proceeding
Pending in the United States
Bankruptcy Court for the
Western District of
Washington at Tacoma)

Plaintiff

-Against-

SUSAN FAYE DONES (10-04338-BDL)
KIM MARIE WOOLHOUSE (10-04339- BDL),

Defendants

## I. PURPOSE OF MOTION

Through this Motion, non-party Toni F. Foley f/k/a Toni F. Natalie, acting *Pro Se,* seeks to have
the Court quash the subpoena that would otherwise allow NXIVM to take her deposition in

accordance with the Order that was entered in this matter on August 3, 2011 – or, in the alternative, that the Court limit and open access to that deposition as described herein.

The Court has scheduled a hearing on this matter at 2:30 PM (EDT) on Monday, August 22, 2011. In anticipation of that hearing, I am filing this Motion To Quash Subpoena To Take Deposition – Or, In The Alternative, To Limit And Open That Deposition.

## II. RELEVANT FACTS

The exhibits that are pertinent to this Motion are attached to the accompanying "Declaration" of Toni F. Foley. In this regard, the relevant facts with respect to this Motion are set forth below.

## III. REASONS WHY THE SUBPOENA SHOULD BE QUASHED

The subpoena should be quashed for several reasons. These include the fact that NXIVM intentionally used my former name, rather than my current name, which is much more than a mere misnomer. In this regard, the use of my former name is, upon information and belief, an attempt on the part of NXIVM and Raniere/Vanguard to harass me and intimidate me – and to exert control over me.

The subpoena should also be quashed because of the improper manner in which it was served. In this regard, NXIVM's Process Server made no attempt to serve the subpoena on me prior to July 5, 2011 – and then improperly served the subpoena upon my husband without even ascertaining who he was.

In addition to the above, NXIVM's Process Server has, upon information and belief, filed a false instrument with respect to his service of the subpoena. In this regard, his statement that he referred to my husband, Scott T. Foley, as "Mr. Natalie" is totally unbelievable – and only serves to underscore of the impropriety of the entire service process.

## IV. ALTERNATIVE RELIEF

If the Court is not willing to grant my request that the subpoena regarding my deposition be quashed, then I request that it reduce the length of that deposition from the already approved maximum of four (4) hours to a new maximum of two (2) hours; that the deposition take place on September 12, 2011 at the location of my choosing in either Albany, NY or Rochester, NY; that I be allowed to have a non-attorney advisor/consultant attend the deposition if I am not able to find an attorney who will represent me on a *pro bono* basis; that I be allowed to avoid answering any questions that I have reason to believe will aid and abet NXIVM and/or Raniere/Vanguard in the commission of criminal acts; and that the entire deposition be conducted in an open forum that can be attended by anyone who has been approved by NXIVM or me. In addition, I further request that the Court require NXIVM to post a cash bond of at least Two Hundred Fifty Thousand Dollars ($250,000) in order to cover the cost of any medical treatments that I may need as a result of my participation in the deposition.

With respect to the documents and records that I have been directed to produce, I ask that I not be required to produce any documents and/or records that have already been produced, after the expenditure of much time and effort, by Ms. Dones and/or Ms. Woolhouse. In this regard, I do not routinely maintain text messages, emails, and/or phone records – and, given that NXIVM has already received all of all of the relevant records from Ms. Dones and Ms. Woolhouse, this is a moot point.

I believe that each of my above-stated requests is reasonable and appropriate, especially in light of the litigious nature of NXIVM and its use of questionable legal tactics. In this regard, I ask the Court to take into consideration the unethical manner in which NXIVM has already acted with respect to all of the proceedings concerning the taking of my deposition: e.g., the failure to send me copies of any of the documents concerning those proceedings; the failure to inform the United States Bankruptcy Court for the Western District of Washington at Tacoma about the fact that it had already obtained an Order to take my deposition on or before September 12, 2011; etc.

## V. CONCLUSION

For the reasons set forth herein, I respectfully request that the Court quash the subpoena that NXIVM was authorized to serve upon me so that it can take my deposition – or, in the alternative, that the Court limit and open access to that deposition in accordance with the proposed terms and conditions set forth above.

Date: August 12, 2011

Toni F. Foley: _____

## CERTIFICATE OF SERVICE

I hereby certify that on August 12, 2011, I caused to be served a copy of the foregoing "MOTION TO QUASH SUBPOENA TO TAKE DEPOSITION – OR, IN THE ALTERNATIVE, TO LIMIT AND OPEN ACCESS TO THAT DEPOSITION" on the following persons in the manner indicated below and at the addresses listed below. In this regard, it is my understanding that, with the exception of Susan Faye Dones and Kim Marie Woolhouse, each of these persons will also receive notification of this filing via CM/ECF once it is posted on PACER.

Susan Faye Dones, *Pro Se*
call2action@msn.com
616 9th Avenue, SW
Puyallup, WA 98371
Via Email

Kim Marie Woolhouse, *Pro Se*
kimwoolhouse@msn.com
616 9th Avenue, SW
Puyallup, WA 98371
Via Email

Paul D. Swanson, WSBA No. 13656
swanson@lanepowell.com
Tiffany H. Scott, WSBA No. 41740
scottt@lanepoweell.com
c/o Lane Powell PC
1420 Fifth Avenue
Suite 4100
Seattle, WA 98101-2338
Via Email and CM/ECF

Robert D. Crockett, admitted *Pro Hac Vice*
bob.crockett@lw.com
c/o Latham & Watkins, LLP
355 South Grand Avenue
Los Angeles, CA 90071-1560
Via Email and CM/ECF

Stephen R. Coffey, admitted *Pro Hac Vice*
scoffey@oalaw.com
Pamela A. Nichols, admitted *Pro Hac Vice*
pnichols@oalaw.com
Richard H. Weiskopf, admitted *Pro Hac Vice*
rweiskopf@oalaw.com
c/o O'Connell & Aronowitz PC
54 State Street
Albany, NY 12207
Via Email and CM/ECF

Mark Waldron, Trustee
trustee@orlandini-waldron.com
Office of the Clerk
c/o United States Bankruptcy Court
  for the Western District of Washington At Tacoma
1717 Pacific Ave.
Tacoma, WA 98402
Via Email and CM/ECF

Date: August 12, 2011

Toni F. Foley:

THE HONORABLE DAVID G. LARIMER
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
Hearing Date: August 22, 2011

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

In Re Application of NXIVM Corporation for Ex Parte
Motion to Shorten Time on Motion to Compel the
Deposition of Nonparty Witness Toni Natalie and
Motion to Compel the Deposition of Nonparty Witness
Toni Natalie

**DECLARATION OF
NONPARTY TONI F.
FOLEY IN SUPPORT
OF MOTION TO
QUASH SUBPOENA
– OR, IN THE
ALTERNATIVE, TO
LIMIT AND OPEN
ACCESS TO THAT
DEPOSITION**

**Miscellaneous Action No.:
6:11- MC -06009- DGL**

NXIVM CORPORATION,

(Adversary Proceeding
Pending in the United States
Bankruptcy Court for the
Western District of
Washington at Tacoma)

Plaintiff

-Against-

SUSAN FAYE DONES (10-04338-BDL)
KIM MARIE WOOLHOUSE (10-04339- BDL),

Defendants

**I, Toni F. Foley, do hereby declare and affirm as follows:**

1.  I am over the age of twenty-one (21) and, unless otherwise noted, make the statements that are set forth in this Declaration based upon information that is in my possession and facts that are known to me personally. If called upon, I can and will competently testify to all of those statements.

2.  Since I cannot afford to hire an attorney to represent me in this matter – and since I have been unable to identify any attorney who will represent me on a Pro *Bono* basis because of the well-known litigious nature of the Plaintiff, NXIVM Corporation ("NXIVM") – I am filing this "Declaration" (and other related documents) on a *Pro Se* basis. In this regard, I ask that this Court's indulgence with respect to any procedural flaws in these filings.

3.  My legal name is – and since my marriage to Scott T. Foley ("Scott") on March 28, 2001 has been – Toni F. Foley. In this regard, that is the name that appears on my New York State Driver's License, on the Voter Registration rolls, etc.

4.  NXIVM and its founder, Keith A. Raniere a/k/a Vanguard ("Raniere/Vanguard"), are well aware of the fact that my legal name is Toni F. Foley. In this regard, my marriage to Scott – and the subsequent change of my name to Toni F. Foley – occurred during the 8-year and 4-month period of time when NXIVM and several of its high-ranking members were attempting to intervene in my personal bankruptcy case.

5.  Via an Order that was entered on June 8, 2011, the United States Bankruptcy Court for the Western District of Washington at Tacoma ("the Washington Bankruptcy Court") authorized NXIVM to take the depositions of several non-parties, including, as requested and designated by NXIVM, "Toni Natalie" (See Dkt No. 140, ¶1 in that matter). Thereafter, on June 29, 2011[1], NXIVM issued a subpoena in my former name, "Toni Natalie", through this Court (See Attachment I for a copy of that subpoena).

6.  Upon information and belief, NXIVM's use of my former name, "Toni Natalie", rather than my current name, "Tony F. Foley", was intentional – and meant to cause me mental anguish and distress. In this regard, the use of my former name is, upon information and belief, an overt attempt on the part of NXIVM and Raniere/Vanguard to intimidate me – and to force me to accept their portrayal of me as a "suppressive" (In the jargon of NXIVM and Raniere/Vanguard, the word "suppressive" is used in

---

[1] I ask this Court to take judicial notice of the fact that NXIVM inexplicitly delayed the issuance of this subpoena for more than three (3) weeks. In this regard, this type of unnecessary delay is, upon information and belief, one of the numerous "legal strategies" that NXIVM routinely employs in order to cause its opponents in legal matters to waste time and/or to incur additional expense.

place of the word "enemy" – and the name "Toni Natalie" has been bandied about for years within the NXIVM community as a prime example of a "suppressive").

7.  Upon information and belief, the use of my former name was also meant to remind me that Raniere/Vanguard and his followers still do not accept the fact that I left him when he first began putting together the entity that would become NXIVM – and that in doing so, I abandoned the role that they had determined was my "Karmic duty": i.e., to serve as the "Chosen One" within the NXIVM community and to bear the child of Raniere/Vanguard that would change the world.   In this regard, this type of "mind game" is exactly the type of thing that NXIVM and Raniere/Vanguard do on a regular and ongoing basis in order to gain or maintain psychological control over people.

8.  In addition to requesting that the subpoena in question be issued in my former name rather than in my current name, NXIVM also failed to properly serve me with a copy of the .  In this regard, NXIVM's alleged service of that subpoena took place as follows:

    (a) At or about 4:00 PM on July 5, 2011, I was away from my residence.

    (b) While I was absent, an unknown male approached my husband, Scott, at the end of the driveway to our residence – and asked to see "<u>Toni Foley</u>" (emphasis added).

    (c) When Scott told the unknown male that I was not present, the unknown male then threw an envelope at Scott's feet – and said "Tell <u>Toni Natalie</u> (<u>emphasis added</u>) that she's been served."

    (d) When Scott attempted to return the envelope to the unknown male, the unknown male refused to take it back – and said: "I was told to just leave the envelope in your driveway."

    (e) The unknown male then drove away.

9.  During the period from June 8, 2011 through July 5, 2011, I made no attempt whatsoever to avoid being served with a subpoena from NXIVM or any other entity. Notwithstanding any claims to the contrary by NXIVM's Process Server, Douglas Thompson ("Mr. Thompson"), I maintained all of my normal behaviors and routines throughout that time period; accepted telephone calls; responded to the doorbell at our residence by opening the door; etc.  In this regard, Mr. Thompson's credibility is certainly undercut by his totally unbelievable claim in his "Supplemental Affidavit" that my husband "...gave his name as "Scott Natalie" – and "...agreed to accept service on (my) behalf".

10. In addition to requesting that the subpoena in question be quashed because it was not issued in my name and because it was improperly served, I am also requesting that it be quashed because it was served through this Court, the U.S. District Court for the Western District of New York, rather than the United States Bankruptcy Court for the Western District of New York ("the New York Bankruptcy Court"). In this regard, it is my understanding and belief that NXIVM should have issued the subpoena in question through the New York Bankruptcy Court – and the fact that this Court apparently forwarded my initial filing to the New York Bankruptcy Court would seem to add credence to that understanding and belief[2].

11. I have no knowledge of any matters concerning the claims that NXIVM has made with respect to Defendant Susan Faye Dones ("Dones") or Defendant Kim Marie Woolhouse ("Woolhouse"). Upon information and belief, NXIVM is seeking to take my deposition in their joined bankruptcy cases in an effort to exert control over me; to remind me that I am still vulnerable to them; and to force me to needlessly waste my time and resources on this matter.

12. Notwithstanding my lack of knowledge about the issues that are germane to the Dones and Woolhouse bankruptcy cases, I do have first-hand knowledge of how NXIVM has utilized and abused the legal system – especially the legal system as regards bankruptcy cases – to harass, intimidate, and punish those who have been identified as "enemies" of NXIVM and/or Raniere/Vanguard. In this regard, my own bankruptcy case that was filed on October 27, 1999 was not resolved until March 17, 2008 because of all of the legal proceedings and time-wasting legal maneuverings that NXIVM and Raniere/Vanguard – and their horde of attorneys – unleashed upon me over the course of 8 years and 4 months of legal terrorism.

13. Despite the extraordinary efforts of NXIVM and some its high-ranking members, I was ultimately discharged from bankruptcy. And, as noted in the applicable "Memorandum – Decision & Order", a copy of which is attached hereto as Attachment III, the Court concluded that Raniere/Vanguard's claims against me *"...smack of a jilted fellow's attempt at revenge or retaliation against his former girlfriend, with many attempts at tripping her up along the way."*

14. Since the conclusion of my personal bankruptcy case in March 1999, I have had no contact whatsoever with NXIVM and/or Raniere/Vanguard. In this regard, I have no interest in having any further contact with either of them for the rest of my life.

---

[2] In her letter to me dated July 15, 2011, Cheri E. Fiordeliso, the Deputy Clerk for the New York Bankruptcy Court, indicated that there was no record of this case in that Court (See Attachment II for a copy of that letter). Since I never filed any documents with the New York Bankruptcy Court, it is my assumption that this Court forwarded the materials that I filed on July 12, 2011 to that Court.

15. Based upon information and belief, it appears that NXIVM's claims against Dones and Woolhouse are also an attempt at revenge or retaliation. In this regard, Raniere/Vanguard has a long history of using the legal system to punish those who have turned away from him and his teachings: e.g., NXIVM's lawsuit against cult-deprogrammer Rick Ross ("Mr. Ross") has already gone on for more than eight (8) years – and, as unbelievable as it may sound, has included an appeal by NXIVM to the U.S. Supreme Court over the denial of a Preliminary Injunction. Since NXIVM obviously knew that its appeal to the U.S. Supreme Court over a denied Preliminary Injunction, had little chance for success, it is obvious that it only undertook that appeal in order to force Mr. Ross to expend his time and resources to respond to it (Not surprisingly, *certiorari* was denied by the U.S. Supreme Court).

16. I have no interest in assisting NXIVM and Raniere/Vanguard in their ongoing attempt to ruin the lives of Dones and Woolhouse, whose only fault, insofar as I am aware, is that they got sucked into the "black hole" that is NXIVM and Raniere/Vanguard. In this regard, I am unwilling; both from a legal standpoint and from a moral standpoint, to help NXIVM and Raniere/Vanguard ruin the lives of any more innocent people – and/or to help NXIVM and/or Raniere/Vanguard further prosper on the suffering of others.

17. NXIVM's decision to subpoena me and to take my deposition is nothing more than a "fishing expedition" – and, upon information and belief, will produce no information and/or materials that are germane to the Dones/Woolhouse bankruptcy cases. In this regard, NXIVM has not provided any proof whatsoever that I have any information or materials that are relevant to those cases – and it is my belief that NXIVM is seeking to take my deposition in order to harass, intimidate and punish me and/or to force a delay in the scheduled trial in the Dones and Woolhouse bankruptcy cases.

18. I ask this Court to take judicial notice of the fact that NXIVM recently withdrew all of its claims for monetary damages in the Dones/Woolhouse bankruptcy cases[3]. As a result, NXIVM has even less need and/or reason to take my deposition than it did at the time it first sought permission to do so.

19. As it has done in many other cases, NXIVM has made allegations about Dones, Woolhouse, and me without any evidence whatsoever to back up those allegations. In accordance with its usual "legal strategy", NXIVM is now trying to depose me in

---

[3] It is my understanding that NXIVM drop its claims for monetary damages in conjunction with its refusal to turn over documents and records that the Washington Bankruptcy Court had ordered it to provide to Ms. Dones and Ms. Woolhouse, It is also my understanding that the Washington Bankruptcy Court has, *sua sponte*, scheduled a hearing on August 31, 2011, in order to determine whether NXIVM's counsel should be sanctioned for its refusal to comply with the Court's order concerning those documents and records.

order to dig up some evidence to support those claims – or, at the very least, to further delay the proceedings in the Dones and Woolhouse cases and to further harass, intimidate, and punish me.

20. The mere fact that I may have communicated with Dones and/or Woolhouse does not give NXIVM the right to further harass, intimidate, and punish me. In this regard, I have the right, per the First Amendment to the U.S. Constitution, to engage in free speech – and that right cannot, in the absence of any proof that it has been abused, be abridged, suppressed, or undermined in any way.

21. I do not believe that I should have to subject myself to the type of mental anguish and trauma that I previously suffered as a result of my decision to terminate my personal relationship with Raniere/Vanguard. Having already been diagnosed with – and treated for – Post Traumatic Stress Disorder (PTSD) as a result of my previous involvement with NXIVM and Raniere/Vanguard, I do not believe that I should be forced to put my physical and mental health at risk by subjecting myself to further legal torture by them. This opinion is supported by my personal physician, Dr. Bernard J. Plansky ("Dr. Plansky") – who, as indicated in his letter dated August 4, 2011, has determined that my existing fibromyalgia condition, which was a consequence of the Post Traumatic Stress Disorder (PTSD) that resulted from events which involved Raniere/Vanguard, will likely worsen if I am forced to participate in any deposition by NXIVM's attorneys (See Attachment IV for a copy of that letter).

22. Were it not for the fact that the court filings in this matter are apparently "open" and available to anyone who has access to the PACER system[4], Dr. Plansky would have gone into much more detail as to the events that led to my original PTSD diagnosis. Although I am only willing to discuss those matters if the Court can guaranty, with 100% certainty, that the information will never be shared with NXIVM or any member of its legal team, I can assure this Court that those events were truly horrific and life changing.

23. I am hopeful that this Court will see through all of the legal smoke and mirrors that NXIVM has employed in this case – and take into consideration the horrible precedent that will be set if NXIVM and Raniere/Vanguard are allowed to use this forum as a means of further punishing two (2) women who simply want to leave NXIVM and Raniere/Vanguard behind and get on with their lives. In this regard, I am hopeful that this Court will also take into consideration how its decision in this matter will affect not only Dones and Woolhouse but also anyone else who is trying to summon the courage to leave NXIVM and Raniere/Vanguard.

---

[4] It appears that for some unknown reason(s), the Order that this Court issued on August 3, 2011 was originally "Sealed". In this regard, however, it appears that the August 3, 2011 Order was "Unsealed" as of August 10, 2011.

24. I ask that this Court take judicial notice of the fact that NXIVM is now employing at least six (6) attorneys from three (3) prominent law firms in order to pursue its claims against Dones and Woolhouse. This alone should it abundantly clear that NXIVM's objective in this matter is not justice and equity but rather revenge and punishment – and that it will spend whatever money it takes in order to enable Raniere/Vanguard to attempt to impose his values and his will on others.

Date: August 12, 2011

Toni F. Foley:

## CERTTFICATE OF SERVICE

I hereby certify that on July 18, 2011, I caused to be served a copy of the foregoing "DECLARATION OF NON-PARTY TONI F. FOLEY IN SUPPORT OF MOTION TO QUASH SUBPOENA CONCERNING DEPOSITION – OR, ALTERNATIVELY, TO LIMIT, POSTPONE, RELOCATE AND OPEN ACCESS TO THAT DEPOSITION" on the following persons in the manner indicated below and at the addresses listed below. In this regard, it is my understanding that, with the exception of Susan Faye Dones and Kim Marie Woolhouse, each of these persons will also receive notification of this filing via CM/ECF once it is posted on PACER.

Susan Faye Dones, *Pro Se*
call2action@msn.com
616 9th Avenue, SW
Puyallup, WA 98371
Via Email

Kim Marie Woolhouse, *Pro Se*
kimwoolhouse@msn.com
616 9th Avenue, SW
Puyallup, WA 98371
Via Email

Paul D. Swanson, WSBA No. 13656
swanson@lanepowell.com
Tiffany H. Scott, WSBA No. 41740
scottt@lanepoweell.com
c/o Lane Powell PC
1420 Fifth Avenue
Suite 4100
Seattle, WA 98101-2338
Via Email and CM/ECF

Robert D. Crockett, admitted *Pro Hac Vice*
bob.crockett@lw.com
c/o Latham & Watkins, LLP
355 South Grand Avenue
Los Angeles, CA 90071-1560
Via Email and CM/ECF

Stephen R. Coffey, admitted *Pro Hac Vice*
scoffey@oalaw.com
Pamela A. Nichols, admitted *Pro Hac Vice*
pnichols@oalaw.com
Richard H. Weiskopf, admitted *Pro Hac Vice*
rweiskopf@oalaw.com
c/o O'Connell & Aronowitz PC
54 State Street
Albany, NY 12207
Via Email and CM/ECF

Mark Waldron, Trustee
trustee@orlandini-waldron.com
Office of the Clerk
c/o United States Bankruptcy Court
  for the Western District of Washington At Tacoma
1717 Pacific Ave.
Tacoma, WA 98402
Via Email and CM/ECF

Date: August 12, 2011

Toni F. Foley: _____

# Attachment I

AO 88A  (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Western District of New York

| | |
|---|---|
| NXIVM Corporation | ) |
| *Plaintiff* | ) |
| v. | )   Civil Action No.   10-04338-BDL, 10-04339-BDL |
| Susan Faye Dones (10-04338-BDL) | ) |
| Kim Marie Woolhouse (10-04339-BDL) | )   (If the action is pending in another district, state where: |
| *Defendant* | )   Bankruptcy Court W.D. of Washington   ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:   Toni Natalie
~~303 Macedon Center Rd., Fairport, NY 14450~~   *13 SANTA CIRCLE, PITTSFORD, NY 14534*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.  If you are an organization that is *not* a party in this case, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:
See Exhibit A

| Place: Nixon Peabody | Date and Time: |
|---|---|
| 1300 Clinton Square, Rochester, NY 14604 | 07/15/2011 9:00 am |

The deposition will be recorded by this method:   Video _____

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:
See Exhibit A

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:   06/29/2011

|  | |
|---|---|
| *CLERK OF COURT* | OR _____ |
| _____ | _____ |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*   __NXIVM Corporation__
_____ , who issues or requests this subpoena, are:

Pamela A. Nichols; 54 State Street, Albany, New York 12207-2501; Pnichols@oalaw.com; (518)-462-5601.

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

### (c) Protecting a Person Subject to a Subpoena.

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

### (d) Duties in Responding to a Subpoena.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

### (e) Contempt. 
The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

## Subpoena to Toni Natalie – Exhibit A

You are commanded to appear and testify about the following topics, and to produce the following documents that are in your possession, custody, or control, which shall be made available for inspection, copying, and/or review three (3) days prior to the deposition, regarding:

1.    All documents demonstrating personal knowledge of the dispute involving Plaintiff and Defendants herein;

2.    All documents to/from Defendants relating to communications had with Defendants relating to NIXVM and/or its agents, servants, or employees;

3.    All documents to/from Defendants relating to communications had with Defendants regarding the above-captioned matters, including, but not limited to, phone and text (SMS) message records, beginning July 1, 2008.

4.    All documents to/from Defendants relating to the April 2009 meetings with Keith Raniere and/or the videotapes of those meetings, including, but not limited to, documents in which Defendants were recipients via CC or BCC;

5.    All documents to/from Defendants relating to the April 24, 2009 emails sent to Keith Raniere, Nancy Salzman, and Plaintiff's executive board, including, but not limited to, documents in which Defendants were recipients either by CC or BCC; and

6.    All documents to/from Defendants relating to the organization, formation, and/or activities of a group – nicknamed "the Roses" – that was and is made up of former members of NXIVM Corporation and whose professed goal is and has been to destroy, injure, and/or otherwise tarnish Plaintiff and Plaintiff's reputation

# Attachment III

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

ENTERED ON DOCKET

INITIALS:

In re:

TONI F. NATALIE

            Debtor.

Case No. 99-16195
Chapter 7

KEITH RANIERE

            Plaintiff

     vs.

TONI F. NATALIE

            Defendant.

Adv. Proc. No. 01-90027

APPEARANCES:

Dwyer & Dribusch, LLP
Attorneys for the Debtor
350 Northern Boulevard, Suite 102
Albany, NY 12204

Christian H. Dribusch, Esq.

Cutler, Trainor & Cutler, LLP
Attorneys for Plaintiff
2 Hemphill Place, Suite 153
Malta, NY 12020

James P. Trainor, Esq.

Whiteman, Osterman & Hanna
One Commerce Plaza
Albany, NY 12260

Leslie Apple, Esq.

Hon. Robert E. Littlefield, Jr., U.S. Bankruptcy Judge

## Memorandum-Decision & Order

The matter before the court is the objection to discharge filed by Creditor Keith Raniere ("Plaintiff"). The court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 157(a), 157(b)(1), 157(b)(2)(J) and 1334(b).

1

## Facts

Based on the documents filed in the Debtor's case and the testimony and exhibits admitted at trial, the court finds the following:

The Debtor filed a Chapter 7 petition on October 27, 1999. National Health Outlet A Place of Creations, Inc. ("NHO"), a corporation owned by the Debtor, also filed a Chapter 7 petition on that date. Gregory Harris, Esq. was appointed the trustee in each bankruptcy case.

On her Schedule F (Creditors Holding Unsecured Nonpriority Claims), the Debtor states that she owes the Plaintiff $2,000 for "1996-99 property claims." Her Schedule F lists a claim for Albany Restaurant in the amount of $46,800.09; it also states the debt was for "1999 Guarantor purchases" and that a codebtor exists. The codebtor listed on the Debtor's Schedule H (Codebtors) for the Albany Restaurant debt is NHO. NHO's Schedule H lists the Debtor as a codebtor on the Albany Restaurant debt. Neither the Debtor nor NHO lists Albany Restaurant on its Schedule G (Executory Contracts and Unexpired Leases).

Both the Debtor's and NHO's Schedules F also state which unsecured nonpriority claims are subject to setoff; they are remarkably similar. The Debtor's Schedule F lists the claims of 10 Lake Corporation, Advanta Leasing Services, American Express Centurion Bank, Fleet Leasing Corp. (Sanwa), GE Capital, GE Capital Colonial Pacific Corp., PC Information Leasing Corp. and Southeastern Leasing & Equipment Corporation. NHO's Schedule F[1] lists Copelco Capital, Inc., GE Capital, GE Capital Colonial Pacific Corp., IFC Information Leasing Corp. and Preferred Capital Corporations as creditors having claims subject to setoff.

In response to Schedule B's (Personal Property) question 5, the question which asks what

---

[1] NHO's Schedule F is missing page 1.

2

books, pictures, art objects, etc. a debtor owns, the Debtor checked the box labeled "NONE." On the amended Schedule B she filed on April 21, 2000, however, she states she owns "Paintings, Prints, Posters" worth $1,100. She later testified at one of her depositions that the $1,100 value included her son's painting and posters and prints and that the frames were worth more than the actual graphics themselves.

During her depositions, Michael Rudin, Esq., the Debtor's former bankruptcy attorney,[2] often commented about her Schedule B amendment, particularly her belief that the artist presented the portrait to her son as a gift. (*See* Ex. 5 pp. 66-67.) However, at trial the Debtor denied that she had previously testified the painting belonged to her son. (Tr. 90.) In an affidavit the Debtor signed on January 28, 2000 and later filed with the court, the Debtor stated, "All the artwork I had consisted of art worth no more than Five Hundred and 00/100 Dollars ($500.00), all of which were sold in 1998 to pay my medical expenses." Whenever asked under oath if she ever had an appraisal of the artwork done, she answered she had not.

On her Schedule B, the Debtor also listed an ownership interest in Blue Crystal LLC and Hi-Step Enterprises, Inc. During her depositions, she testified she was at least a part owner of both entities and both operated pizzerias.

Both the Debtor and NHO had a section 341 meeting of creditors scheduled for December 13, 1999. The Debtor attended the meeting as an individual in her own case and in her capacity as a corporate officer of NHO in the corporation's case.[3] Several individuals

---

[2]Christian H. Dribusch, Esq., was substituted as attorney for the Debtor in this adversary proceeding on June 12, 2001.

[3]At trial, the court received the transcript of the 341 meeting into evidence for impeachment purposes only. (Tr. 99.)

3

attended the meetings, including the Trustee and her former counsel. An attorney for one of the creditors asked the Debtor a series of questions regarding transfers "in the last six years." (Ex. 28 pp. 14-15.)[4] During that line of questioning, Rudin interrupted the creditor's attorney and asked him questions like "of what value?" and "without value or for value?"

When the Trustee conducted his due diligence, including reviewing tax returns and corresponding with or otherwise interviewing third parties, he used documentation the Debtor produced. He ultimately filed a no distribution report in each case and NHO's case was closed. Later, the Trustee reopened that case to provide the Debtor's business associate, Nancy Saltzman ("Saltzman"), with an opportunity to purchase the Debtor's interest in five or six of the business entities she disclosed in her schedules. Saltzman never made an offer so the Trustee closed the corporation's case again.

The Debtor attended high school until the ninth grade. Prior to her business and personal involvement with the Plaintiff, the Debtor sold fruit baskets out of her home. The Plaintiff and an associate of his named Karen Unterreiner helped the Debtor form numerous business entities. He prepared many of the documents submitted to third parties by the Debtor; he also assisted in acquiring equipment.

In March or April 1999, the Debtor and Plaintiff's personal relationship ended. Thereafter, he began harassing her and otherwise disrupting her business to the point where she hired Rudin. At trial, the Plaintiff did not controvert the Debtor's testimony that his influence over her caused her to surrender her adopted son to her ex-husband.

Approximately one month prior to filing for bankruptcy protection, the Debtor closed

---

[4]The court admitted Exhibit 28 for impeachment purposes only. (Tr. 99.)

4

NHO and secured the equipment in the building it leased from the landlord. When the Debtor visited the site more than a year later, she noticed much of the equipment NHO had leased remained there and was being used by the current tenant. She neither took the equipment nor sold any of it. NHO has disclosed in its Statement of Financial Affairs, however, that certain small restaurant equipment was sold to Zylos, Inc. and the proceeds were used to pay sales taxes. An employee of ILC, an equipment lessor, corroborated the Debtor's testimony that the landlord was in possession of the equipment post petition. (Tr. p. 42.) An employee of Quiktrak, a company that does onsite inspection and inventory verification, testified that he personally saw up to 75% of the equipment the equipment lessors were looking for on the premises. (Tr. p. 59.)

Salzman filed a section 523 adversary proceeding[5] against the Debtor and requested certain documentation from her and NHO. No one has challenged the Debtor's testimony that she provided approximately 33 banker boxes of records. The boxes contained personal checks, business checks, bank statements, credit card statements, tax returns, corporate books, Quickbook reports and lease agreements. The Debtor was unable to provide the computer records she kept for the various corporations she owned due to a computer virus. None of the documents she provided to Salzman have been returned.

On September 15, 1999, Hi-Step Enterprises, Inc., a non-debtor corporation the Debtor owns, sold certain assets, including the name "Mr. Shoes Pizza," to Zylos, Inc., an entity operated by the Debtor's mother, Joan Schneier. The Debtor's brother ran Hi-Step's day to day operations. The proceeds were allegedly used to pay Hi-Step's tax obligations although no one

---

[5]Ms. Salzman was represented by the law firm of Whiteman, Osterman & Hanna. An attorney from that firm, Mr. Leslie Apple, "assisted" the Plaintiff's attorney in this adversary proceeding. (Tr. 4.)

offered any other evidence supporting or challenging that. The Debtor, in a January 28, 2000 affidavit, swore, "Hi Step never owned the name Mr. Shoes Pizza." (Ex. 7 ¶ 12e.)

According to Schneier's testimony and a promissory note dated June 30, 1998, on or around June 30, 1998, more than one year prior to filing, she received artwork from the Debtor after paying her approximately $10,000. Both Schneier and Gerald P. Dagostino, C.P.A., signed the note as witnesses. At trial, Dagostino testified that he did not recall signing the document but his usual business practice was to sign documents on or near the date reflected on them. The document itself is confusing. Although it purports to be Ms. Schneier's written promise to pay the Debtor $10,000 for artwork, pictures and paintings, the Debtor signed the document as a guarantor.

Confusing the artwork sale matter more is a transcript of the Debtor's November 15, 2000 deposition. She testified she intended to sell her the artwork, then analogizes the transaction to the second mortgage her mother had obtained on the Debtor's house. Later on she testified that if the payments provided for in the agreement had been made, her mother would not have had any right to the artwork because the Debtor would not have owed her any money, but then stated she did not know if the artwork was the security for the payment of her debt to her mother. (*See* Ex. 6 pp. 64-66.)

Schneier testified the Debtor used the $10,000 to pay for surgery the Debtor needed to lessen the harmful physical effects resulting from a damaged silicon implant and to keep her business afloat during her recovery. She also testified she did not have sufficient room in her home initially to take possession of the artwork. Prior to moving to Rochester and after her husband recovered from a heart attack, Schneier had the artwork removed from the Debtor's

6

residence with the help of family and friends. Once she took possession of it, she retained it.

One part of Schneier's testimony the court found disturbing was her description of the Plaintiff's harassment of her and her family, including the Debtor. Schneier recounted the time the Plaintiff sent police to her house and the numerous occasions he threatened her and her family on the phone. The only other aspect of the Plaintiff's case in chief worth noting is his Exhibit 13, particularly the document captioned "Preferred Capital 'Schedule A'" ("P.C. Schedule A"). The P.C. Schedule A states it is a lease between Preferred Capital Corporation and National Health Network, Inc, and lists the equipment it covers, including a 2-door freezer and 3-door cooler from Albany Restaurant.

Before the trial concluded, the court read a quote from its *Raymonda*[6] decision. In doing so, it intended to emphasize the heavy burden placed upon a party objecting to a discharge and to comment on what it perceived as a lack of proof regarding the Plaintiff's section 727(a)(2) and section 727(a)(4) causes of action. (*See* Tr. 215-217; 220-221.)

### Arguments

In his opening brief, the Plaintiff contends the Debtor should be denied a discharge pursuant to 11 U.S.C. §.727(a)(4) for knowingly and fraudulently making a false oath or account regarding the existence, ownership, possession and value of artwork, some restaurant equipment, the "Mr. Shoes" trade name and the oil painting called "Michael." He asserts she did not list the art as a secured debt on the bankruptcy petition so she could remove the collection from the court's purview and purchase it back at any time. The Plaintiff goes on to state the Debtor is a beneficiary under her mother's will and stands to inherit the art back; he references his

---

[6]Case No. 00-90060, Adv. Proc. No. 99-91199 (Bankr. N.D.N.Y. 2001).

"Appendix D - "Secret Benefit."  In that document, he recites a part of the Debtor's November 15, 2000 deposition where she testified she was a beneficiary under her mother's life insurance policy.

The Plaintiff also asserts the Debtor should not receive a discharge based on 11 U.S.C. § 727(a)(3) for concealing information or failing to preserve recorded information regarding her financial condition or business transactions, particularly the value of her art collection. He also argues a denial of her discharge is warranted pursuant to 11 U.S.C. § 727(a)(5) for failing to explain the loss of assets or deficiency of assets to meet her obligations, in particular, the equipment purchased from Albany Restaurant.

Raised for the first time in a part of his opening brief labeled "Merger Agreement," the Plaintiff contends NHO's bankruptcy was fraudulent. He does not, however, provide any statutory or case law analysis to support this contention.

In her response to the Plaintiff's opening brief, the Debtor asserts the Plaintiff has not met his burden of proof on any of the section 727 causes of action, including the gravamen of his complaint, section 727(a)(4). Regarding section 727(a)(2), she argues the Plaintiff has not proven that any of her or NHO's property had been, or was permitted to be, transferred, removed, destroyed, mutilated, or concealed within one year before the date of filing with the intent to hinder, delay, or defraud a creditor. According to the Debtor, the evidence shows any sale of an asset was for fair consideration and the proceeds were used for her or NHO's legitimate expenses.

Regarding section 727(a)(3), the Debtor contends the Plaintiff has submitted no evidence of what "recorded information" she concealed, destroyed, mutilated, falsified or failed to keep

8

from which her or NHO's financial condition or business condition might be ascertained.  She asserts her uncontradicted testimony and that of her mother are that 33 banker boxes of books and records were provided to the parties in interest.  According to her, she did not provide the Plaintiff with an appraisal of the artwork because she had no such appraisal, thus, she had no "recorded information."

The Debtor also contends the Plaintiff did not meet the requirements under sections 727(a)(5) or 727(a)(7) because she cooperated in the NHO bankruptcy proceeding and satisfactorily explained the loss or deficiency of assets.  To her, assets were not lost, rather, the assets were the lease agreements she listed on the bankruptcy petition and not the equipment pieces referred to in those lease agreements.  She argues the Plaintiff has not submitted any evidence that those assets were worth any less at the time of filing than they were worth at the time of the lease agreements' inception.  For the Debtor, her testimony and that of one of the Plaintiff's witnesses support a finding that approximately one month before the filing of the petition, most of the equipment was on the former NHO premises after they were vacated, that equipment was locked up and, later, a new tenant used it.  She asserts the equipment lessors did little to retrieve and liquidate the equipment post petition and contends the Plaintiff has not produced any documentation or other evidence demonstrating that she transferred, liquidated, or otherwise disposed of any of the leased equipment prior to the filing of the NHO petition.  She also contends he has not shown she received a benefit from such transfer, liquidation or disposition.

As for the Plaintiff's main contention, his section 727(a)(4) argument, the Debtor begins by challenging his interpretation of what happened at her section 341 meeting.  She points out

9

that not only did the court admit the transcript of that meeting for the limited purpose of impeachment, but even if it had been received as direct evidence, there is no evidence her statement, made while surrounded by several individuals, was made "knowingly" and "fraudulently." She contends there is no evidence of a secret deal between her and her mother which shows she retained a legal or beneficial right to the artwork, that her mother gave her anything other than fair value for it and that she used the proceeds for anything other than her surgery and business's expenses. She cites *Cullinan Assocs., Inc. v. Clements*, 215 B.R. 818 (W.D. Va.), *aff'd*, 131 F.3d 133 (4th Cir. 1997), and argues her mistaken statement is different from the one the debtor made in *Raymonda* because in that case the debtor had sufficient time to consider the simpler questions posed. In contrast, she asserts she did not have sufficient time to consider all of the "in the last six years" questions she was asked. Furthermore, unlike the debtor in *Raymonda* who still had and used the tools when he filed, the Debtor sold the artwork more than a year prior to filing her petition and did not possess it when she did file.

Regarding the "Michael" painting, the Debtor asserts her amended schedule was a defensive move by her so that if she had any rights in the painting, those rights were disclosed. The Debtor's response to the Plaintiff's challenge regarding the "Mr. Shoes" transaction is that the uncontradicted testimony shows the proceeds of the Hi-Step Enterprises, Inc. sale of its assets, including the Mr. Shoes name, to Zylos, Inc. was for fair value and used to pay tax creditors of that non-debtor entity. The Debtor contends the Plaintiff's papers acknowledge and concede that she relied on her attorney with regard to her deposition testimony regarding who owned the "Mr. Shoes" trade name. Distinguishing *Raymonda* once again, the Debtor states she never owned the trade name "Mr. Shoes" and argues that because the transaction involved two

10

non-debtor entities, it is not a matter which "include[s] the debtor's business transactions and the discovery of assets or the disposition of the debtor's property." She further argues the Plaintiff has not submitted any expert opinion or documentary evidence which shows the values of the corporations' stocks disclosed by her were worth anything other than zero. According to her, the zero value of the stock was corroborated by Saltzman's failure to make an offer to purchase all the entities' ownership interests.

In his[7] reply brief, the Plaintiff presents the court with a case law analysis that discusses *Raymonda* in more detail and distinguishes the cases the Debtor relies on in her opening brief. Although he lists 19 areas where the Debtor "misrepresents, deletes or provides directly contradicting testimony," overall he focuses on the Debtor's transfer and concealment of her artwork and the "Mr. Shoes" trade name and the absence and concealment of business equipment. (Plaintiff's Response to Defendant's Post-Trial Memorandum ("Response") unnumbered p. 2.) In his introduction, he also contests the Debtor's right "to declare corporate bankruptcy," arguing "[w]ithout the forged, invalid Merger Agreement in place both the Natalie and NHO bankruptcies immediately unravel." (Response unnumbered p. 1.)

The Plaintiff also challenges the Debtor's explanation of the loss or deficiency of assets, her characterization of the leases as assets, her offer to make them available to parties in interest, her failure to provide a list of every piece of equipment (leased or owned) and her representations that either the new tenant or the landlord had the equipment. Regarding the Debtor's assertion

---

[7]The pronoun the Plaintiff uses when referring to the party pursuing the objection to discharge causes of action is "we." The convoluted format and content of his two briefs, especially his "appendices" and his "supplements," make them extremely difficult to follow and do not indicate who, if anyone, might be an additional plaintiff.

11

that there is no proof that Albany Restaurant provided any equipment to her or NHO, he refers to Exhibit 13, particularly the agent's finding regarding 75% of the equipment, not 100%. He downplays the leasing companies' lack of action and the Debtor's inability to access the premises once she filed and he argues that if the leasing companies had abandoned equipment, then it should go into the estate to pay the Debtor's creditors. He also argues Exhibit 9 supports a finding that the Debtor's assets dropped from the $650,000 value she placed on them within a year of filing.

Finally, the Plaintiff asks the court to take judicial notice of seven facts. He lists them in a document labeled "Appendix C - Public Record Appendix."

**Discussion**

I. Validity of the NHO Petition

The Plaintiff did not formally object to the filing of NHO's petition until he challenged their validity in his post trial briefs. Moreover, he neither substantiates his argument with uncontested facts nor provides supporting case law. While the court often conducts its own research when deciding issues, it is certainly not responsible for making a party's prima facie case, especially when that party is represented by counsel. Thus, this issue will not be considered by the court.

II. Judicial Notice

The Plaintiff also did not ask the court to take judicial notice of seven "facts" until he filed his reply brief.[8] Although the Federal Rules of Evidence provide for "mandatory" judicial

---

[8] When a plaintiff raises a new issue in a reply brief, the court usually allows the defendant to file a brief addressing it. For reasons that will become apparent, the court did not allow the Debtor to do that in this proceeding.

12

notice of adjudicative facts, the request itself does not merit serious consideration given the Plaintiff's failure to supply the court with the necessary information. FED. R. EVID. 201(d). Merely indicating "anyone can call or visit" is not sufficient when the burden of collecting the information lies with the proponent, not the court, particularly when phone numbers or addresses have not been provided.

Furthermore, at least **one** of the "facts" cannot be ascertained by a mere phone call since state taxing authorities cannot release taxpayer information in the absence of a proper judicial order. *See* N.Y. TAX L. § 202. If the court followed the state law requirements and entertained issuing an order, it would not execute one without first providing the Debtor with an opportunity to be heard. Also, although **the federal** rules allow for a request at any time, the timing of the request seems to be **part** of the Plaintiff's answer to the challenges the Debtor raised in her brief, i.e., his attempt to fix what **he missed** getting into evidence prior to the close of trial.

The court does not hold **the Plaintiff's seven** "facts" are "self-evident truths that no reasonable person could question, truisms that approach platitudes or banalities." *Hardy v. Johns-Manvile Sales Corp.*, 681 F.2d 334, 347-48 (5th Cir. 1982). Accordingly, the request is denied.

III. Objections to Discharge

As the court has already pronounced, the denial of a discharge is not only an extremely drastic and harsh sanction, it is the death penalty of bankruptcy. *Raymonda*, at p. 4. Like many other objection to discharge adversary proceedings, the matter here involves two vital bankruptcy maxims: the debtor's paramount duty to fully and accurately prepare his or her petition, schedules and statements and the Bankruptcy Code's purpose of giving a deserving debtor a fresh

13

start. *Id.*

While all of the policy precepts of *Raymonda* apply to this case, a material factual

distinction between this case and *Raymonda* is that the Trustee has not asserted the Debtor failed

to disclose assets or other information on her bankruptcy petition or the NHO bankruptcy

petition. The individual challenging the Debtor's discharge is her former boyfriend. Although

he is a creditor of the Debtor, compared to the similar creditor bodies in the two cases, his claim

is very small. Moreover, unlike the more typical scenario of the Chapter 7 estate's fiduciary

objecting to a debtor's discharge, this matter smacks of a jilted fellow's attempt at revenge or

retaliation against his former girlfriend, with many attempts at tripping her up along the way.

After careful consideration of the entire record, with particular attention paid to the

Plaintiff's post trial briefs and appendices, the court concludes the Plaintiff did not meet his

burden of proving, by a preponderance of the evidence, that the Debtor should not receive a

discharge.

A. 11 U.S.C. § 727(a)(2)

Bankruptcy Code § 727(a)(2) provides for the denial of a discharge if:

[T]he debtor, with intent to hinder, delay, or defraud a creditor or an officer of the
estate charged with custody of property under this title, has transferred, removed,
destroyed, mutilated, or concealed, or had permitted to be transferred, removed,
destroyed, mutilated, or concealed –
> (A) property of the debtor, within one year before the date of the filing of
> the petition; or
> (B) property of the estate, after the date of the filing of the petition.

The Plaintiff's brief does not contain any argument supporting an objection to discharge

pursuant to § 727(a)(2). As for the Debtor's sale of her artwork, the Plaintiff did not offer any

14

testimony that the sale of it was for other than fair consideration or that the proceeds were used for anything other than her or her business's legitimate expenses. Thus, any causes of action based on it are dismissed.

B. 11 U.S.C. § 727(a)(3)

Bankruptcy Code §727(a)(3) provides for a denial of discharge if:

[T]he debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

Of course, sophisticated debtors are held to a higher level of accountability. *In re Sethi*, 250 B.R. 831 (Bankr. E.D.N.Y. 2000). In the instant case, however, the Debtor has a ninth grade education and, prior to her involvement with the Plaintiff, the extent of her business practice was selling fruit baskets from her home. As already found, the uncontradicted testimony was the parties in interest received, but have yet to return, 33 banker boxes of books and records, including corporate and personal tax returns, bank statements, business checks, personal checks, corporate books and Quickbook reports. Although the Debtor did not provide the Plaintiff or the Trustee with an appraisal of the artwork, she did not do so because she did not have one. Unlike the tax returns and the books and records she was required to keep according to federal and state law, the Plaintiff has not convinced the court that the Debtor was required to obtain and retain an appraisal. Thus, he has failed to prove a section 727(a)(3) cause of action.

C. 11 U.S.C. § 727(a)(4)

The gravamen of the Plaintiff's objection is based on Bankruptcy Code §727(a)(4). Section 727(a)(4) provides for a denial of discharge if:

15

> [T]he debtor knowingly and fraudulently, in or in connection with
> the case –
>
> (A)  made a false oath or account;
> (B)  presented or used a false claim; ·
> (C)  gave, offered, received, or attempted to obtain money,
>      property, or advantage, or a promise of money, property, or
>      advantage, for acting or forbearing to act; or
> (D)  withheld from an officer of the estate entitled to possession
>      under this title, any recorded information, including books,
>      documents, records, and papers, relating to the debtor's ·
>      property or financial affairs.

As the statute provides, the false oath or account must be both knowingly and fraudulently made
and it must relate to a material matter, including the debtor's business transactions and the
discovery of assets or the disposition of the debtor's property. *See In re Murray,* 249 B.R. 223
(E.D.N.Y. 2000).

The Plaintiff argues the Debtor left several items off of her petition, schedules and
statements. They are treated in greater detail below:

1. The Artwork

The Plaintiff asserts the Debtor lied about artwork she either owned when she filed or
transferred within six years of filing on several occasions. Each occasion is addressed below:

a. The Meeting of Creditors

The Plaintiff asserts the Debtor did not disclose the transfer of artwork at her § 341
meeting. To start, the transcript of the meeting was admitted for the sole purpose of
impeachment, not as direct evidence. Even if the court accepted it as direct evidence, the
Plaintiff does not point to any evidence to show her statement, made while surrounded by as
many as 11 individuals, was made knowingly and fraudulently. There is no evidence the Debtor
made any unusual transaction or deliberately covered her tracks, no evidence of a secret deal

16

between her and her mother where she retained a legal or beneficial right to the artwork and no evidence her mother gave the Debtor anything but fair value for the artwork. The Plaintiff has not even supported his contention that the Debtor will inherit the art under her mother's will.

As for the proceeds the Debtor and her mother say she received, the only evidence in the record regarding them is the Debtor used them for her surgery and NHO's business expenses. The Debtor's confusion, nervous state or misunderstanding of the compound question she was asked at the section 341 meetings does not support a determination that a fraudulent misrepresentation occurred. *See Cullinan Assocs., Inc.*, 215 B.R. at 821. The context of the Debtor's "statement" is different from the debtor's in *Raymonda*. Here, the Debtor was not asked straightforward questions like "do/did you own paintings?" and "where are they now?" Rather, the series of questions asked involved broad, legally-worded queries which required the Debtor to recall "transactions" involving art and numerous other assets she allegedly owned during the six years prior to filing. The line of questioning prompted her attorney to ask clarifying questions. Given the context, especially Rudin's interruptions and involvement, the court does not infer fraudulent intent by the Debtor. *See Murray*, 249 B.R. at 228.

b. The Schedules and Amended Schedules

The same rationale applies with regard to the Debtor's Amended Schedule B. The Debtor did not disclose the existence of any artwork until she filed her Amended Schedule B, however, her credible testimony regarding the amendment is that she filed it to reflect the existence of the "Michael" painting, i.e., art belonging to her son. Furthermore, the Plaintiff has failed to prove, by a preponderance of the evidence, that she actually owned artwork when she filed.

c. The January 2000 Affidavit (Exhibit 7)

17

Although the Debtor's otherwise fairly credible story is once again supported by Exhibit 7, her January 2000 affidavit, Exhibit B arguably compromises it. In her affidavit she swears the artwork she sold in 1998 was only worth $500. However, Exhibit B, the promissory note between herself and her mother, and the testimony of the Debtor and her mother indicate she might have received as much as $10,000 for it.

To the court, if in her affidavit the Debtor had stated she had received $500 instead of stating what the value of the artwork was worth when she transferred it, the weight of the evidence behind the promissory note would have created quite a significant discrepancy in her story. Without the "received" statement, however, the court views the promissory note as evidence that the Debtor's mother paid approximately $9,500 too much for the artwork, in effect, gifting the Debtor that money so she could pay for her surgery. Due to the lack of any evidence in the record evidencing the various paintings and lithographs had a higher value when the Debtor transferred it to her in exchange for money for her medical and business expenses, the court does not find she lied in that affidavit. Thus, Exhibit 7 does not support a section 727(a)(4) determination.

### 2. The "Mr. Shoes Pizza" Trade Name

To the court, the only evidence the Plaintiff has to support a denial of discharge pursuant to section 727(a)(4) centers on the trade name "Mr. Shoes Pizza." As already found, the Debtor filed an affidavit dated January 28, 2000 in which she swore that Hi-Step Enterprises, her sole corporation, "never owned" the Mr. Shoes Pizza trade name. Yet, the Asset Purchase Agreement between Hi-Step and Zylos, even with its effective date discrepancy, reflects a sale of Hi-Step's assets to her mother's corporation, including that trade name. That agreement supports a finding

18

that the Debtor's affidavit contained a false statement about an asset her non-debtor corporation

owned.

Meeting section 727(a)(4)'s requirements that (1) the debtor made the statement under

oath and (2) the statement was false, however, does not end the inquiry. *See In re Martin,* 208

B.R. 799, 805 (N.D.N.Y. 1997); *Raymonda,* p. 5 (citing *In re Scott,* 233 B.R. 32 (Bankr.

N.D.N.Y. 1998) and *In re Kelly,* 135 B.R. 459 (Bankr. S.D.N.Y. 1992)). The Plaintiff also has to

prove criteria three through five, namely: (3) the debtor knew the statement was false; (4) the

debtor made the statement with fraudulent intent; and (5) the statement related materially to the

bankruptcy. *Id.* According to the Second Circuit, testimony given "knowingly and fraudulently"

means nothing more than "an intentional untruth in a matter material to the issue which is itself

material." *In re Melnick,* 360 F.2d 918, 920 (2d Cir. 1966)(citing *In re Slocum,* 22 F.2d 282, 285

(2d Cir. 1927)).

To the court, the Debtor knew her May 2000 "never owned" statement was false when

she made it. Of course, a debtor is unlikely to admit to an intentional false statement, therefore,

the creditor may prove "knowledge" for purposes of section 523(a)(4)(A) by proving the debtor

acted with reckless disregard for the truth. *In re Scott,* 233 B.R. at 44 (citing *In re Chavin,* 150

F.3d 726, 728 (7th Cir. 1998)). Here, while it is true the Debtor's attorney and not the Debtor

herself answered essentially all of the questions regarding the ownership of the Mr. Shoes Pizza

trade name during the April 24, 2000 deposition, the court finds the Debtor knew her January 28,

2000 affidavit contained the false statement when she signed it based on the extent of the

documentation involved with the sale of that trade name and her ownership of Hi-Step. The

court cannot find the Debtor, as sole owner of Hi-Step and the one who executed the sale

19

documents on its behalf as president, did not know Hi-Step owned the Mr. Shoes Pizza trade name approximately one month before she filed. In light of the timing of the sale and the documentation behind it, any denial of knowledge by her would be both internally inconsistent and implausible and a reasonable factfinder would not credit it. *See In re Chavin*, 150 F.3d at 728.

Even a deliberately false statement, however, may not support a denial of discharge under section 727(a)(4) since the debtor must have also made the statement fraudulently. *In re Scott*, 233 B.R. at 44. Because it is difficult to prove directly, courts have allowed creditors to prove fraudulent intent using circumstantial objective evidence. *Id.* (citing *In re Devers*, 759 F.2d 751, 754 (9th Cir. 1985)). Whether the debtor derived a benefit or the creditor a detriment is often one of the most important circumstantial factors to consider. *Id.* (citing *In re Agnew*, 818 F.2d 1284, 1287 (7th Cir. 1987)). As a result, courts may consider materiality as a proxy for fraudulent intent. *Id.* (citing *In re Chavin*, 150 F.3d at 728).

Here, the circumstantial evidence persuades the court that the Debtor did not have the requisite fraudulent intent. The Debtor's story is the proceeds of the sale constituted fair value and were used to pay Hi-Step's tax creditors. Although the Debtor did not provide any documentation to support that, the Plaintiff's only challenge to it is based on information that is not part of the record, i.e., Appendix C - Public Record Appendix Fact #1. Furthermore, the court finds the Debtor heavily relied on Rudin when testifying that the Mr. Shoes Pizza trade name did not belong to Hi-Step. In fact, Rudin himself "testified" on quite a number of occasions during the Debtor's depositions.

Despite the Plaintiff's analogy, his prima facie case is not at all like the one the trustee

20

documents on its behalf as president, did not know Hi-Step owned the Mr. Shoes Pizza trade name approximately one month before she filed. In light of the timing of the sale and the documentation behind it, any denial of knowledge by her would be both internally inconsistent and implausible and a reasonable factfinder would not credit it. *See In re Chavin*, 150 F.3d at 728.

Even a deliberately false statement, however, may not support a denial of discharge under section 727(a)(4) since the debtor must have also made the statement fraudulently. *In re Scott*, 233 B.R. at 44. Because it is difficult to prove directly, courts have allowed creditors to prove fraudulent intent using circumstantial objective evidence. *Id.* (citing *In re Devers*, 759 F.2d 751, 754 (9th Cir. 1985)). Whether the debtor derived a benefit or the creditor a detriment is often one of the most important circumstantial factors to consider. *Id.* (citing *In re Agnew*, 818 F.2d 1284, 1287 (7th Cir. 1987)). As a result, courts may consider materiality as a proxy for fraudulent intent. *Id.* (citing *In re Chavin*, 150 F.3d at 728).

Here, the circumstantial evidence persuades the court that the Debtor did not have the requisite fraudulent intent. The Debtor's story is the proceeds of the sale constituted fair value and were used to pay Hi-Step's tax creditors. Although the Debtor did not provide any documentation to support that, the Plaintiff's only challenge to it is based on information that is not part of the record, i.e., Appendix C - Public Record Appendix Fact #1. Furthermore, the court finds the Debtor heavily relied on Rudin when testifying that the Mr. Shoes Pizza trade name did not belong to Hi-Step. In fact, Rudin himself "testified" on quite a number of occasions during the Debtor's depositions.

Despite the Plaintiff's analogy, his prima facie case is not at all like the one the trustee

20

presented in *Raymonda*. There, in addition to all the contradictions and inconsistencies, when questioned by the trustee at his adjourned § 341 meeting, the debtor was, as conceded by his own attorney, slow to disclose the existence of the tools. *Raymonda* at p. 7. Later, when testifying in court during the trial, the debtor readily admitted the trustee would never have found out about the tools if his ex wife had not noted their existence. *Id.* On the other hand, the Plaintiff's prima facie case did not leave the court with the same flippant, teeth pulling impression of the debtor that the trustee's presentation in *Raymonda* did. *See id.* at p. 8.

Furthermore, in *Raymonda*, the debtor retained the use and benefit of the assets he owned. *Raymonda*, at p. 5. Here, the Debtor herself never owned the trade name Mr. Shoes Pizza. Her asset, the stock of Hi-Step, was disclosed on her schedules and valued at zero. Even though she produced boxes of information, the Plaintiff did not produce an expert valuation or any other evidence to show that her stock was worth anything other than zero.

Although courts have inferred fraudulent intent from circumstantial evidence, the circumstances here do not warrant such a holding. *See In re Freudmann*, 362 F.Supp. 429, 433 (S.D.N.Y. 1973), *aff'd*, 495 F.2d 816 (2d Cir. 1974). The Second Circuit has determined the following circumstances constitute "badges of fraud":

> (1) the lack or inadequacy of consideration;
> (2) the family, friendship or close associate relationship between the parties;
> (3) the retention of possession, benefit or use of the property in question;
> (4) the financial condition of the party sought to be charged both before and after the transaction in question;
> (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and
> (6) the general chronology of the events and transactions under inquiry. *In re Kaiser*, 722 F.2d 1574 (2d Cir. 1983)(citing *In re May*, 12 B.R. 618 (Bankr. N.D. Fla. 1980)).

21

Based on the findings and determinations already made, the court concludes the Plaintiff has not shown what badges of fraud exist here. Although the transfer was from the Debtor's corporation to her mother's corporation, the record does not contain any evidence to support a finding that either individual treated her corporate business as her own thereby deriving a personal "benefit" from the transaction.

Finally, the court recognizes once the creditor shows an intentional falsehood, "'the burden falls upon the debtor to come forward with evidence that it was not an intentional misrepresentation. If the debtor fails to provide such evidence or a credible explanation for his failure to do so, a court may infer fraudulent intent.'" *Raymonda*, at p. 7 (quoting *In re Murray*, 249 B.R. at 228). The court accepts the Debtor's explanation that her mother's corporation purchased the trade name as part of a larger sale and, based on the absence of any evidence to the contrary, paid sufficient consideration for it. Therefore, the Debtor has rebutted the inference of fraudulent intent. *Murray*, 249 B.R. at 228.

The egregious facts in *Raymonda* simply do not exist here. The lack of evidence coupled with the Debtor's attorney's apparent role in her business and her mother's role in both her personal and business life, leads the court to conclude that what the Debtor "intended," if anything, was to obtain money for her non-debtor business's assets and to place the trade name "Mr. Shoes Pizza" back into her mother's business where she had always been told it belonged. Having received no direct or indirect benefit, the court does not conclude she intended to defraud her creditors, thus, the causes of action based on § 727(a)(4) are also dismissed.

D. 11 U.S.C. § 727(a)(5)

22

Bankruptcy Code § 727(a)(5) provides for a denial of discharge if:

> [T]he debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities.

The Debtor has satisfactorily explained the loss of assets or deficiency of assets. The Plaintiff is apparently confused as to what constitutes an asset of a bankruptcy estate. Since the equipment was leased by the Debtor and/or her corporations, the personal property itself would not constitute estate property. The leases, however, would. In general, leases of personal property do not have much, if any, value, thus, the court would not necessarily view a debtor's mistake in not listing them on a Schedule B as fatal to receiving a discharge.

Given the Debtor's production of 33 boxes of personal and business records, there is nothing in the record to suggest she did not provide all the recorded information of her and NHO's business transactions. Furthermore, the Plaintiff has not submitted any evidence that the equipment leases were worth less at the time of filing than they were worth at the time of inception of the lease agreements.

Even if the court assumed the assets consisted of the equipment as opposed to the lease agreements, the Debtor's uncontradicted testimony was that approximately one month before the filing of the petition, the equipment was locked upon the premises. Although they are favorable to the Debtor's side of the story in large part, the court perceives all of the testimony from the equipment lessors as nothing more than solicitations by the Plaintiff to provide one or two sentence statements without substantiation or explanation. If the equipment lessors had determined the Debtor had violated their rights, why not exercise their own rights under state law prior to her bankruptcy filing and/or under the Bankruptcy Code after she filed? The court has

23

also been left with the impression that the Plaintiff himself assisted in the acquisition of equipment and that he managed and controlled the businesses' day-to-day operations, at least until the day he and the Debtor parted company. If that is true, then arguably, he contributed to any diminution in value.

Finally, the Plaintiff has not provided any evidence that there was a loss or deficiency of assets prior to the Debtor and NHO filing bankruptcy petitions. He has not produced any documentation or other evidence demonstrating the Debtor transferred, liquidated or otherwise disposed of any of the leased equipment prior to the filings or received a benefit from a transfer or disposition. The only evidence offered is the Debtor's and some of the equipment lessors' testimonies that the landlord possessed the equipment post petition. Thus, the court concludes the Plaintiff has not met his burden of proving a section 727(a)(5) cause of action.

E.  11 U.S.C. § 727(a)(7)

Bankruptcy Code § 727(a)(7) provides for a denial of discharge if:

> [T]he debtor has committed any act specified in paragraph (2), (3), (4), (5), or (6) of this subsection, on or within one year before the date of the filing of the petition, or during the case, in connection with another case under this title or under the Bankruptcy Act, concerning an insider.

The provision was designed to induce the cooperation of individuals in related bankruptcy cases. *See In re Krehl*, 86 F.3d 737 (7th Cir. 1996). Section 727(a)(7) binds "'related cases together so that misconduct in one case by an individual may be chargeable against that individual in other related proceedings.'" *In re Transp. Mgmt Inc.*, 278 B.R. 226, 238 (Bankr. M.D. Ala. 2002)(quoting *Whiteside F.S., Inc. v. Siefkin*, 46 B.R. 479, 480-81 (N.D. Ill. 1985). Thus, the section acts to prevent debtors who are involved in several bankruptcy proceedings from failing

24

to cooperate in proceedings in which their discharges are not at issue, and then, subsequently or simultaneously, obtaining individual discharges in their own cases. *Id.*

As the court has found, above, the Debtor cooperated with the Trustee in the NHO bankruptcy case. She even turned over boxes of information to creditors. Thus, the Plaintiff has not sustained his burden of proof on his section 727(a)(7) cause of action.

Accordingly, it is

ORDERED that the Plaintiff's objections to the Debtor's discharge are overruled and the Debtor shall receive her discharge forthwith.

Dated:     JAN 7  2003
          Albany, New York

Honorable Robert E. Littlefield, Jr.
United States Bankruptcy Judge

25

## CERTIFICATE OF MAILING

The undersigned deputy clerk of the United States Bankruptcy Court for the

Northern District of New York at Albany, hereby certifies that a true copy of the attached

document was mailed this date to the following parties at the addresses shown:

U.S.Trustee
74 Chapel St.
Albany, NY 12207

James P. Trainor, Esq.
The Trainor Law Firm LLC
636 Plank Road
Ste 108
Clifton Park, NY 12065

Christian H. Dribusch, Esq.
Dwyer & Dribusch, LLP
350 Northern Blvd.
Albany, NY 12204

Toni F. Natalie
20 Anchor Drive
Waterford, NY 12188

Gregory Harris, Esq.
The Patroon Bldg.
5 Clinton Square
Albany, NY 12207

The mailing was deposited in a regular United States mailbox in the city of Albany,

New York.

Date: _____          _____
                                              Deputy Clerk

notsentrydecision
attorneytg (11/99)
notsentry

## U.S. Bankruptcy Court
## Northern District of New York (Albany)
## Bankruptcy Petition #: 99-16195-1-rel

*Assigned to:* Chief Judge Robert E.
Littlefield Jr.
Chapter 7
Voluntary
No asset

|  |  |
|---|---|
| *Date filed:* | 10/27/1999 |
| *Date terminated:* | 03/17/2008 |
| *Date discharged:* | 01/07/2003 |

Show Associated Cases

| **This person is a party in 5 cases.** | | | |
|---|---|---|---|
| 99-16195-1-rel | Toni F. Natalie | filed 10/27/99 | closed 03/17/08 |
| 00-90169-1-rel | Salzman v. Natalie | filed 07/10/00 | closed 09/13/01 |
| 01-90027-1-rel | Raniere v. Natalie | filed 02/06/01 | closed 02/13/07 |
| 04-90006-1-rel | Raniere v. Natalie | filed 01/07/04 | closed 04/06/04 |
| 04-90007-1-rel | Keeffe v. Natalie | filed 01/07/04 | closed 10/15/07 |

*Debtor*
**Toni F. Natalie**

represented by **Michael B. Rudin**
16 West Main Street

20 Anchor Drive
Waterford, NY 12188
SSN / ITIN: xxx-xx-0066
*aka*
**a/k/a and f/k/a - various names as listed
on petition**

Suite 142
Rochester, NY 14614
(716) 262-4733

*Trustee*
**Gregory G. Harris**
Harris, Conway & Donovan PLLC
The Patroon Building
5 Clinton Square
Albany, NY 12207
(518)436-1661

*U.S. Trustee*
**Diana G. Adams,**
U.S. Trustee
74 Chapel Street
Suite 200
Albany, NY 12207

*U.S. Trustee*
**Diana G. Adams,**
U.S. Trustee
74 Chapel Street
Suite 200
Albany, NY 12207

| Court Name | Case Number | Start Date | End Date |
|---|---|---|---|
| '2nd Circuit' | '06-0652-bk' | | |
| Bankruptcy Court | 04-90007Adv.Proc. | 05/02/2005 | 01/17/2006 |

| Filing Date | # | Docket Text |
|---|---|---|
| 10/27/1999 | 1 | Voluntary Petition all schedules and statements. ; Proof of Claim (gov) Deadline: 4/24/00 ( Filing Fee $ 130.00 Misc. Fee $ 30.00 Tr. Surcharge Fee $ 15.00 Receipt # 19908468) (Yungblut,J.) (Entered: 10/29/1999) |
| 10/29/1999 | | First Meeting of Creditors Scheduled For 9:30 9/13/99 At |

| | | |
|---|---|---|
| | | O'Brien Federal Bldg.,Albany Last Day To Oppose Discharge: 11/12/99 (AutoDocket) (Entered: 10/29/1999) |
| 11/02/1999 | 2 | Bankruptcy Noticing Center (QSI) Certificate of Mailing Together With Notice RE: First Meeting; # of Notices: 127. (AutoDocket) (Entered: 11/02/1999) |
| 11/03/1999 | | Amended First Meeting of Creditors Scheduled For 9:30 12/13/99 At O'Brien Federal Bldg.,Albany Last Day To Oppose Discharge: 2/11/00 (as per Linda at UST--first notice had incorrect date). (Coughlin,K.) (Entered: 11/03/1999) |
| 11/05/1999 | 3 | Certificate Of Service By Michael B. Rudin for Debtor Toni F. Natalie Of notice to creditors(unspecified as to which notice--regular or amended) . (Coughlin,K.) (Entered: 11/05/1999) |
| 11/08/1999 | 4 | Bankruptcy Noticing Center (QSI) Certificate of Mailing Together With Notice RE: Amended First Meeting; # of Notices: 127. (AutoDocket) (Entered: 11/08/1999) |
| 11/19/1999 | 5 | Notice of Appearance And Request For Service Of Notice By O'Connell & Aronowitz, P.C. for Creditor Capital Production Group. (Thibault,J.) (Entered: 11/19/1999) |
| 11/24/1999 | 6 | Motion By Creditor Delta Funding Corp For Relief From Stay ( RP) . (Coughlin,K.) (Entered: 11/24/1999) |
| 11/24/1999 | | Filing Fee Paid in Full RE: [6-1] Motion For Relief From Stay ( RP) by Delta Funding Corp ( Filing Fee $ 75.00 Receipt # 19909205) (Coughlin,K.) (Entered: 11/24/1999) |
| 11/24/1999 | 6 | Notice of Hearing on Default Motion RE: [6-1] Motion For Relief From Stay ( RP) by Delta Funding Corp Scheduled for 01/06/00 at 9:00 at Albany, NY ; Answer Due By 1/3/00 (Coughlin,K.) (Entered: 11/24/1999) |
| 11/24/1999 | 7 | Certificate Of Service By Forsyth, Howe, O'Dwyer & Kalb, P.C. for Creditor Delta Funding Corp Of [6-1] Default Notice of Hearing, [6-1] Motion For Relief From Stay ( RP) by Delta Funding Corp . (Coughlin,K.) (Entered: 11/24/1999) |

| 11/29/1999 | 8 | Certificate Of Service By Michael B. Rudin for Debtor Toni F. Natalie Of [0-0] First Meeting . (Coughlin,K.) (Entered: 11/29/1999) |
|---|---|---|
| 11/29/1999 | 9 | Notice of Appearance And Request For Service Of Notice By Advanta Leasing Services Corp. (Coughlin,K.) (Entered: 11/29/1999) |
| 12/02/1999 | 10 | Notice of Appearance And Request For Service Of Notice By Becket & Lee, LLP for Creditor American Express Travel Related Servives. (Coughlin,K.) (Entered: 12/02/1999) |
| 01/06/2000 | 11 | Order Granting [6-1] Motion For Relief From Stay ( RP) by Delta Funding Corp (Coughlin,K.) (Entered: 01/06/2000) |
| 01/10/2000 | 12 | Trustee's Report of No Assets Together with Certification By Trustee. (Coughlin,K.) (Entered: 01/10/2000) |
| 01/24/2000 | 13 | Motion by Creditor Nancy Salzman To Extend Time To File a Sec. 727 Complaint (Coughlin,K.) (Entered: 01/24/2000) |
| 01/24/2000 | 13 | Motion By Creditor Nancy Salzman For Examination of debtor and production of documents Under Rule 2004 (Coughlin,K.) (Entered: 01/24/2000) |
| 01/24/2000 | 13 | Notice of Hearing on Default Motion RE: [13-1] Motion For Examination of debtor and production of documents Under Rule 2004 by Nancy Salzman, [13-1] Extend Time to File 727 Motion by Nancy Salzman Scheduled for 02/10/00 at 9:00 at Albany, NY : Answer Due By 2/7/00 (Coughlin,K.) (Entered: 01/24/2000) |
| 01/24/2000 | 14 | Certificate Of Service By Paul A. Levine for Creditor Nancy Salzman Of [13-1] Default Notice of Hearing, [13-1] Motion For Examination of debtor and production of documents Under Rule 2004 by Nancy Salzman, [13-1] Extend Time to File 727 Motion by Nancy Salzman . (Coughlin,K.) (Entered: 01/24/2000) |
| 02/03/2000 | 15 | Affidavit in Opposition filed by Debtor Toni F. Natalie RE: [13-1] Default Notice of Hearing, [13-1] Extend Time to File 727 Motion by Nancy Salzman (Coughlin,K.) (Entered: |

| | | |
|---|---|---|
| | | 02/03/2000) |
| 02/03/2000 | | Hearing Re: [13-1] Motion For Examination of debtor and production of documents Under Rule 2004 by Nancy Salzman schd For 9:00 2/10/00 at James T. Foley Courthouse, Alb, [13-1] Extend Time to File 727 Motion by Nancy Salzman schd For 9:00 2/10/00 at James T. Foley Courthouse, Alb (Coughlin,K.) (Entered: 02/03/2000) |
| 02/03/2000 | 15 | Certificate Of Service By Michael B. Rudin for Debtor Toni F. Natalie Of [15-1] Opposition Affidavit by Toni F. Natalie . (Coughlin,K.) (Entered: 02/03/2000) |
| 02/07/2000 | 16 | Letter in support From Creditor Donald C. Greene Re: [13-1] Motion For Examination of debtor and production of documents Under Rule 2004 by Nancy Salzman, [13-1] Extend Time to File 727 Motion by Nancy Salzman (Coughlin,K.) (Entered: 02/08/2000) |
| 02/10/2000 | | Hearing Held, granted over oppoition, NO notice of entry needed, Re: [13-1] Motion For Examination of debtor and production of documents Under Rule 2004 by Nancy Salzman : Order Due By 3/13/00, [13-1] Extend Time to File 727 Motion by Nancy Salzman ;Order Due By 3/13/00 . (Coughlin,K.) (Entered: 02/10/2000) |
| 02/11/2000 | 17 | Affidavit in Support filed by Creditor Consumers Buyline Inc RE: [13-1] Motion For Examination of debtor and production of documents Under Rule 2004 by Nancy Salzman, [13-1] Extend Time to File 727 Motion by Nancy Salzman (Coughlin,K.) (Entered: 02/14/2000) |
| 02/11/2000 | 18 | Affidavit in Support filed by Creditor Barbara Jeske RE: [13-1] Motion For Examination of debtor and production of documents Under Rule 2004 by Nancy Salzman, [13-1] Extend Time to File 727 Motion by Nancy Salzman (Coughlin,K.) (Entered: 02/14/2000) |
| 02/11/2000 | 19 | Affidavit in Support filed by Creditor Kristin Keeffe RE: [13-1] Motion For Examination of debtor and production of documents Under Rule 2004 by Nancy Salzman, [13-1] Extend Time to File 727 Motion by Nancy Salzman (Coughlin,K.) (Entered: 02/14/2000) |

| | | |
|---|---|---|
| 02/11/2000 | 20 | Affidavit in Support filed by Creditor Karen Unterreiner RE: [13-1] Motion For Examination of debtor and production of documents Under Rule 2004 by Nancy Salzman, [13-1] Extend Time to File 727 Motion by Nancy Salzman (Coughlin,K.) (Entered: 02/14/2000) |
| 02/11/2000 | 21 | Affidavit in Support filed by Creditor Pamela Cafritz RE: [13-1] Default Notice of Hearing, [13-1] Extend Time to File 727 Motion by Nancy Salzman (Coughlin,K.) (Entered: 02/14/2000) |
| 02/22/2000 | 22 | Order Granting [13-1] Motion For Examination of debtor and production of documents Under Rule 2004 by Nancy Salzman (Thibault,J.) (Entered: 02/22/2000) |
| 02/22/2000 | 22 | Order RE: Granting [13-1] Extend Time to File 727 Motion by Nancy Salzman ;Last Day to file Obj to Discharge Complaint 6/12/00 (Thibault,J.) (Entered: 02/22/2000) |
| 03/22/2000 | 23 | Letter From Paul A. Levine for Creditor Nancy Salzman Re: [22-1] Extend Time to File 727 Order, requesting conference for debtor's deposition. (Thibault,J.) (Entered: 03/23/2000) |
| 03/22/2000 | | Hearing Re: [23-1] Letter by Paul A. Levine ; Status Hearing Set For 9:30 4/3/00 at James T. Foley Courthouse, Alb (Thibault,J.) (Entered: 03/23/2000) |
| 03/27/2000 | 24 | Letter Confirming Confernece From Paul A. Levine for Creditor Nancy Salzman Re: [23-1] Letter by Paul A. Levine (Thibault,J.) (Entered: 03/27/2000) |
| 04/03/2000 | | Hearing Re: [13-1] Motion For Examination of debtor and production of documents Under Rule 2004 by Nancy Salzman rschd For 10:00 4/24/00 at James T. Foley Courthouse, Alb, [13-1] Extend Time to File 727 Motion by Nancy Salzman rschd For 10:00 4/24/00 at James T. Foley Courthouse, Alb (Coughlin,K.) (Entered: 04/04/2000) |
| 04/10/2000 | 25 | Order Granting the debtor must produce the documents in Schedule A by 4/24/00 at 10:00 to Lemery etal [13-1] Motion For Examination of debtor and production of documents Under Rule 2004 by Nancy Salzman (Coughlin,K.) (Entered: 04/10/2000) |

| 04/24/2000 | 26 | Amended Schedules/Lists/Statments B (Coughlin,K.) (Entered: 04/24/2000) |
| 04/24/2000 | 27 | Motion by Creditor Keith Raniere To Extend Time To File a Sec. 727 Complaint (Coughlin,K.) (Entered: 04/25/2000) |
| 04/24/2000 | 27 | Notice of Hearing on Default Motion RE: [27-1] Extend Time to File 727 Motion by Keith Raniere Scheduled for 05/11/00 at 9:00 at Albany, NY ; Answer Due By 5/8/00 (Coughlin,K.) (Entered: 04/25/2000) |
| 04/24/2000 | 28 | Certificate Of Service By James P. Trainor for Creditor Keith Raniere Of [27-1] Default Notice of Hearing, [27-1] Extend Time to File 727 Motion by Keith Raniere . (Coughlin,K.) (Entered: 04/25/2000) |
| 04/24/2000 | 29 | Motion By Creditor Keith Raniere For Examination of Toni Natalie Under Rule 2004 (Coughlin,K.) (Entered: 04/25/2000) |
| 04/24/2000 | 29 | Notice of Hearing on Default Motion RE: [29-1] Motion For Examination of Toni Natalie Under Rule 2004 by Keith Raniere Scheduled for 05/11/00 at 9:00 at Albany, NY ; Answer Due By 5/8/00 (Coughlin,K.) (Entered: 04/25/2000) |
| 04/24/2000 | 29 | Certificate Of Service By James P. Trainor for Creditor Keith Raniere Of [29-1] Default Notice of Hearing, [29-1] Motion For Examination of Toni Natalie Under Rule 2004 by Keith Raniere . (Coughlin,K.) (Entered: 04/25/2000) |
| 04/25/2000 | 30 | Letter From Trustee Withdrawing Trustee's Final Report RE: [12-1] No Asset Report (Coughlin,K.) (Entered: 04/26/2000) |
| 05/05/2000 | 31 | Affidavit in Opposition filed by Debtor Toni F. Natalie RE: [27-1] Extend Time to File 727 Motion by Keith Raniere (Coughlin,K.) (Entered: 05/05/2000) |
| 05/05/2000 | | Hearing Re: [27-1] Extend Time to File 727 Motion by Keith Raniere schd For 9:00 5/11/00 at James T. Foley Courthouse, Alb (Coughlin,K.) (Entered: 05/05/2000) |
| 05/05/2000 | 31 | Certificate Of Service By Michael B. Rudin for Debtor Toni F. Natalie Of [31-1] Opposition Affidavit by Toni F. Natalie |

| | | |
|---|---|---|
| | | . (Coughlin,K.) (Entered: 05/05/2000) |
| 05/09/2000 | | Hearing Held, Briefs due 5/19/00, reply due 5/24/00 this matter is on JUDGE'S RESERVE, Re: [27-1] Extend Time to File 727 Motion by Keith Raniere . (Coughlin,K.) (Entered: 05/09/2000) |
| 05/19/2000 | 32 | Brief/Memorandum in Support By Creditor Keith Raniere Re: [27-1] Extend Time to File 727 Motion by Keith Raniere, [29-1] Motion For Examination of Toni Natalie Under Rule 2004 by Keith Raniere . (Thibault,J.) (Entered: 05/22/2000) |
| 05/19/2000 | 33 | Certificate Of Service By James P. Trainor for Creditor Keith Raniere Of [32-1] Brief/Memorandum by Keith Raniere . (Thibault,J.) (Entered: 05/22/2000) |
| 05/22/2000 | 34 | Brief/Memorandum in Support By Debtor Toni F. Natalie Re: [27-1] Extend Time to File 727 Motion by Keith Raniere, [29-1] Motion For Examination of Toni Natalie Under Rule 2004 by Keith Raniere . (Thibault,J.) (Entered: 05/22/2000) |
| 05/22/2000 | 35 | Certificate Of Service By Michael B. Rudin for Debtor Toni F. Natalie Of [34-1] Brief/Memorandum by Toni F. Natalie . (Thibault,J.) (Entered: 05/22/2000) |
| 05/23/2000 | 36 | Response By Creditor Keith Raniere To [34-1] Brief/Memorandum by Toni F. Natalie . (Coughlin,K.) (Entered: 05/23/2000) |
| 05/23/2000 | 37 | Certificate Of Service By James P. Trainor for Creditor Keith Raniere Of [36-1] Response by Keith Raniere . (Coughlin,K.) (Entered: 05/23/2000) |
| 05/26/2000 | 38 | Response By Debtor Toni F. Natalie To [29-1] Motion For Examination of Toni Natalie Under Rule 2004 by Keith Raniere . (Coughlin,K.) (Entered: 05/26/2000) |
| 05/26/2000 | 38 | Certificate Of Service By Debtor Toni F. Natalie Of [38-1] Response by Toni F. Natalie . (Coughlin,K.) (Entered: 05/26/2000) |

| | | |
|---|---|---|
| 06/08/2000 | 39 | Stipulation By and Between Creditor Nancy Salzman, Debtor Toni F. Natalie For extending the time to object to discharge until 7/10/00. (Coughlin,K.) (Entered: 06/08/2000) |
| 06/08/2000 | 39 | Order RE: Granting [39-1] stipulation by Toni F. Natalie, Nancy Salzman ;Last Day to file Obj to Discharge Complaint 7/10/00 (Coughlin,K.) (Entered: 06/08/2000) |
| 07/10/2000 | | Complaint (00-90169) Nancy Salzman vs. Toni F. Natalie . NOS 424 Objection To Discharge (727) . ( Filing Fee $ 150.00 Receipt # 100005086) (Thibault,J.) (Entered: 07/10/2000) |
| 07/11/2000 | 40 | Letter From James P. Trainor for Creditor Keith Raniere Re: [27-1] Extend Time to File 727 Motion by Keith Raniere, [29-1] Motion For Examination of Toni Natalie Under Rule 2004 by Keith Raniere, requesting extensions. (Thibault,J.) (Entered: 07/11/2000) |
| 08/04/2000 | 41 | Consent To Substitute Attorney Whiteman Osterman & Hanna for old attorney Paul A. Levine for Nancy Salzman (Coughlin,K.) (Entered: 08/04/2000) |
| 09/08/2000 | 42 | Memorandum, Decision, and Order Granting [29-1] Motion For Examination of Toni Natalie Under Rule 2004 by Keith Raniere Granting [27-1] Extend Time to File 727 Motion by Keith Raniere, Complaint Must Be Filed Within 30 Days of 2004 Examination; Denying Creditor's Request To File 523 Complaint Objecting To Dischargeability of His Particular Debt. (Cleveland,D.) (Entered: 09/08/2000) |
| 09/08/2000 | 42 | Notice of Entry To Parties Identified By Attachment To This Order at the Addresses Noted of [42-1] Memorandum, Decision Order . (Cleveland,D.) (Entered: 09/08/2000) |
| 09/08/2000 | 42 | Courts Certificate of Mailing Re: [42-1] Memorandum, Decision Order # of Notices: 6. (Cleveland,D.) (Entered: 09/08/2000) |
| 10/18/2000 | 43 | Letter requesting extention of time to conduct 2004 examination of debtor From James P. Trainor for Creditor Keith Raniere Re: [42-1] Memorandum, Decision Order (Coughlin,K.) (Entered: 10/20/2000) |

| 10/18/2000 | 43 | Chambers Conference Held On 10/20/00 re: request to extend time to conduct 2004 examination: conference concluded, letter not so ordered. (Coughlin,K.) (Entered: 10/20/2000) |
|---|---|---|
| 10/25/2000 | 44 | Letter requesting examination to be held at a convenient time for Mr. Raniere as well as the debtor etc. From James P. Trainor for Creditor Keith Raniere Re: [42-1] Memorandum, Decision Order (Coughlin,K.) (Entered: 10/25/2000) |
| 11/07/2000 | 45 | Certificate Of Service By Whiteman Osterman & Hanna for Creditor Nancy Salzman Of a true copy of Subpoena Duces Tecum-served the witness Fleet Bank . (Coughlin,K.) (Entered: 11/07/2000) |
| 11/09/2000 | 46 | Certificate Of Service By Whiteman Osterman & Hanna for Creditor Nancy Salzman Of Subpoena Duces Tecum on Citibank. . (Coughlin,K.) (Entered: 11/09/2000) |
| 11/09/2000 | 47 | Certificate Of Service By Whiteman Osterman & Hanna for Creditor Nancy Salzman Of subpoena Duces Tecum on American Express . (Coughlin,K.) (Entered: 11/09/2000) |
| 11/09/2000 | 48 | Certificate Of Service By Whiteman Osterman & Hanna for Creditor Nancy Salzman Of Subpoena Duces Tecum on Sears . (Coughlin,K.) (Entered: 11/09/2000) |
| 11/09/2000 | 49 | Certificate Of Service By Whiteman Osterman & Hanna for Creditor Nancy Salzman Of Subpoena Duces Tecum on Bank of America. (Coughlin,K.) (Entered: 11/09/2000) |
| 11/09/2000 | 50 | Certificate Of Service By Whiteman Osterman & Hanna for Creditor Nancy Salzman Of Subpoena Duces Tecum on First USA Bank . (Coughlin,K.) (Entered: 11/09/2000) |
| 11/09/2000 | 51 | Certificate Of Service By Whiteman Osterman & Hanna for Creditor Nancy Salzman Of Subpoena Duces Tecum on Macy's. . (Coughlin,K.) (Entered: 11/09/2000) |
| 11/14/2000 | 52 | Certificate Of Service By Whiteman Osterman & Hanna for Creditor Nancy Salzman Of Supboena Duces Tecum on defendant Providian Financial Corp. . (Coughlin,K.) (Entered: 11/15/2000) |

| 02/06/2001 | | Complaint (01-90027) Keith Raniere vs. Toni F. Natalie . NOS 424 Objection To Discharge (727) . ( Filing Fee $ 150.00 Receipt # 10103109) (Coughlin,K.) (Entered: 02/06/2001) |
|---|---|---|
| 03/27/2001 | 53 | Trustee's Report of No Assets Together with Certification By Trustee. (Thibault,J.) (Entered: 03/27/2001) |
| 09/13/2001 | | Disposition of Adversary (00-90169) Dismissing [1-1] Complaint NOS 424 Objection To Discharge (727) (Coughlin,K.) (Entered: 09/13/2001) |
| 09/13/2001 | | Adversary Case (00-90169) Closed. (99-16195) (Coughlin,K.) (Entered: 09/13/2001) |
| 01/07/2003 | 54 | Order Discharging Debtor Signed on 1/7/2003. (Coughlin, Kathy) (Entered: 01/07/2003) |
| 01/09/2003 | 55 | BNC Certificate of Mailing - Order of Discharge. Service Date 01/09/2003. (Related Doc #     54 ) (Admin.) (Entered: 01/10/2003) |
| 01/07/2004 | 56 | 424 (Obj/Revocation Discharge 727): Complaint by Keith Raniere against Toni F. Natalie . Receipt Number O, Fee Amount $0. . (Attachments: # 1 cover sheet) (Coughlin, Kathy) (Entered: 01/08/2004) |
| 01/07/2004 | 57 | 424 (Obj/Revocation Discharge 727): Complaint by Kristin Keeffe against Toni F. Natalie . Receipt Number O, Fee Amount $0. . (Attachments: # 1 cover sheet) (Coughlin, Kathy) (Entered: 01/08/2004) |
| 04/06/2004 | | Disposition of Adversary 04-90006 . (Coughlin, Kathy) (Entered: 04/06/2004) |
| 04/06/2004 | | Adversary Case 04-90006 Closed. (Coughlin, Kathy) (Entered: 04/06/2004) |
| 08/02/2004 | 58 | Letter Filed by Joan Schnieder (related document(s) 1 ). (Coughlin, Kathy) (Entered: 08/03/2004) |
| 10/15/2007 | | Disposition of Adversary 04-90007 Judgment For Defendant. (Garrow, Sean) (Entered: 10/15/2007) |

| 10/15/2007 | | Adversary Case 04-90007 Closed. (Garrow, Sean) (Entered: 10/15/2007) |
|---|---|---|
| 03/17/2008 | 59 | Final Decree Signed on 3/17/2008. (Garrow, Sean) (Entered: 03/17/2008) |
| 03/17/2008 | | Bankruptcy Case Closed. (Garrow, Sean) (Entered: 03/17/2008) |
| 04/17/2008 | | Trustee Payment Made. Voucher Number is 08465200360 $60.00 paid. (Rosenberg, Dana) (Entered: 04/18/2008) |



## U.S. Party/Case Index

### Civil Name Search Results

| Name | Court | Case No. | Filed | NOS | Closed |
|---|---|---|---|---|---|
| 1 NATALIE, TONI F. | nyndce | 1:2003cv00388 | 03/31/2003 | 422 | 08/19/2003 |
| Raniere v. Natalie | | | | | |
| 2 NATALIE, TONI F. | nyndce | 1:2003cv00388 | 03/31/2003 | 422 | 08/19/2003 |
| Raniere v. Natalie | | | | | |
| 3 NATALIE, TONI F. | nyndce | 1:2005cv00540 | 05/02/2005 | 422 | 01/17/2006 |
| Keeffe v. Natalie | | | | | |

**1:03-cv-00388-TJM** Raniere v. Natalie
Thomas J. McAvoy, presiding
**Date filed:** 03/31/2003
**Date terminated:** 08/19/2003
**Date of last filing:** 07/19/2007

History

| Doc. No. | Dates | | Description |
|---|---|---|---|
| 1 | *Filed:* | 03/31/2003 | Bankruptcy Appeal |
| | *Entered:* | 04/07/2003 | |

| | | | |
|---|---|---|---|
| | *Terminated:* | 08/19/2003 | |
| 2 | *Filed & Entered:* | 04/07/2003 | Bankruptcy Scheduling Order |
| 3 | *Filed & Entered:* | 04/23/2003 | Docket Annotation |
| 4 | *Filed:* | 05/16/2003 | Appellant's Brief |
| | *Entered:* | 05/20/2003 | |
| 5 | *Filed:* | 06/25/2003 | Appellee's Brief |
| | *Entered:* | 06/27/2003 | |
| 6 | *Filed:* | 07/15/2003 | Affidavit in Support of Motion |
| | *Entered:* | 07/17/2003 | |
| 7 | *Filed & Entered:* | 07/31/2003 | Notice (Other) |
| | *Filed:* | 08/11/2003 | Motion Hearing |
| | *Entered:* | 08/12/2003 | |
| 8 | *Filed & Entered:* | 08/12/2003 | Set Deadlines/Hearings |
| | *Filed & Entered:* | 08/19/2003 | Docket Annotation |
| | *Filed & Entered:* | 08/19/2003 | Terminated Case |
| 9 | *Filed & Entered:* | 08/19/2003 | Order |
| 10 | *Filed & Entered:* | 08/19/2003 | Judgment |
| 11 | *Filed:* | 08/26/2003 | Transcript |
| | *Entered:* | 08/28/2003 | |
| 12 | *Filed:* | 08/29/2003 | Notice of Appeal |
| | *Entered:* | 09/02/2003 | |
| | *Terminated:* | 06/16/2006 | |
| | *Filed & Entered:* | 09/02/2003 | Electronic Notice and Certification to USCA of Appeal |
| 13 | *Filed:* | 10/27/2003 | Transcript |
| | *Entered:* | 10/28/2003 | |
| | *Filed & Entered:* | 07/28/2004 | USCA Case Number |
| 14 | *Filed:* | 08/19/2005 | USCA Scheduling Order |
| | *Entered:* | 08/22/2005 | |
| 15 | *Filed & Entered:* | 08/29/2005 | Electronic Certification to USCA of Record on Appeal |
| | *Filed & Entered:* | 12/20/2005 | Docket Annotation |

| | | | |
|---|---|---|---|
| | *Filed & Entered:* | 06/16/2006 | Docket Annotation |
| | *Filed & Entered:* | 12/29/2006 | Docket Annotation |
| 16 | *Filed & Entered:* | 07/19/2007 | USCA Mandate |

## 1:05-cv-00540-LEK Keeffe v. Natalie
Lawrence E. Kahn, presiding
**Date filed:** 05/02/2005
**Date terminated:** 01/17/2006
**Date of last filing:** 05/03/2007

| Doc. No. | Dates | | Description |
|---|---|---|---|
| 1 | *Filed:*<br>*Entered:*<br>*Terminated:* | 05/02/2005<br>05/04/2005<br>05/03/2007 | Bankruptcy Appeal |
| 2 | *Filed:*<br>*Entered:* | 05/02/2005<br>05/04/2005 | Letter |
| 3 | *Filed:*<br>*Entered:*<br>*Terminated:* | 05/02/2005<br>05/04/2005<br>05/03/2007 | Bankruptcy Appeal |
| 4 | *Filed & Entered:* | 05/04/2005 | Bankruptcy Scheduling Notice |
| 5 | *Filed & Entered:* | 06/28/2005 | Letter Request |
| 6 | *Filed:*<br>*Entered:* | 06/30/2005<br>07/05/2005 | Order |
| 7 | *Filed & Entered:* | 07/26/2005 | Letter Request |
| 8 | *Filed & Entered:* | 07/26/2005 | Letter Request |
| 9 | *Filed & Entered:* | 07/27/2005 | Order |
| 10 | *Filed & Entered:* | 07/27/2005 | Order |
| 11 | *Filed & Entered:* | 08/18/2005 | Order |
| 12 | *Filed & Entered:* | 08/26/2005 | Notice of Appearance |

| 13 | *Filed & Entered:* | 08/26/2005 | Certificate of Service |
|---|---|---|---|
| 14 | *Filed & Entered:* | 08/26/2005 | Appellant's Brief |
| | *Filed & Entered:* | 09/12/2005 | Set/Reset Hearings |
| 15 | *Filed & Entered:* | 09/21/2005 | Appellee's Brief |
| 16 | *Filed & Entered:* | 10/11/2005 | Appellant's Reply Brief |
| 17 | *Filed:* *Entered:* | 01/06/2006 01/09/2006 | Order |
| 18 | *Filed & Entered:* | 01/17/2006 | Judgment |
| 19 | *Filed & Entered:* *Terminated:* | 02/08/2006 05/03/2007 | Notice of Appeal |
| | *Filed & Entered:* | 02/09/2006 | USCA Appeal Fees |
| 20 | *Filed & Entered:* | 02/09/2006 | Stipulation |
| 21 | *Filed & Entered:* | 02/14/2006 | Order |
| 22 | *Filed & Entered:* | 02/22/2006 | Electronic Notice and Certification to USCA of Appeal |
| | *Filed & Entered:* | 06/21/2006 | USCA Case Number |
| 23 | *Filed & Entered:* | 05/03/2007 | USCA Mandate |

# Attachment IV

# Tuigh an Ollaton

**FAMILY MEDICINE**

Bernard J. Plansky, M.D.

August 4, 2011

To Whom It May Concern:

Toni Foley (12 August 1958) was diagnosed with Post Traumatic Sress Disorder (PTSD) in June 2004 as a result of events suffered in her former boyfriend's organization with ongoing legal harassment. She was diagnosed with fibromyalgia, a known consequence of PTSD, in September 2009 and is presently applying for Social Security Disability. She is currently receiving medication treatment for the above conditions. Her symptoms are likely to worsen if required to appear in court and undergo rexperiencings of these past events.

Sincerely,

Bernard J. Plansky, M.D.

61F Monroe Avenue  ·  Pittsford Village Green  · Pittsford, N.Y. 14534  · (585) 383-8990 · Fax 383-8292